GREGLEY V. JACKSON ET AL.

1. DESCENTS: *Construction of Statute; Illegitimate children.*
   Children of the same mother, whether legitimate or illegitimate, may transmit an inheritance to any and all collateral relations on the mother's side who are of her blood.

2. SAME: *No vested right in laws of.*
   Laws of inheritance rest in public policy; and during the life of the person owning the property, may be changed at will, without any violation of contractual or vested rights. No one has a vested right to be the future heir of one living.

3. SAME: *Construction of Statute of sixth February, 1867.*
   The Statute of sixth February, 1867, legitimizing the recognized offspring of negroes, or mulattoes, who had cohabited as husband and wife, included the offspring of parents then dead, as well as of those living.

APPEAL from *Jefferson* Circuit Court.
Hon. X. J. PINDALL, Circuit Judge.

STATEMENT.

On the twelfth day of January, 1870, Barkley M. Gillespie and brothers, owners in fee of a certain tract of land in Jefferson county, conveyed it by deed to Marshall Jackson, Sanders Smith and Jacob Keith, as tenants in common.

Afterwards, in December, 1878, said Jacob Keith died intestate, without issue, but leaving a widow, Jane Keith, who died before the institution of this suit, leaving a last will, by which she devised the land to the defendant, William Gregley. In September, 1880, said Sanders Smith conveyed his undivided third interest in the land to Marshall Jackson and one John Keith; and afterwards the defendant, Gregley, got and held exclusive possession of the land, claiming it under the will of said Jane Keith.

In October, 1880, Marshall Jackson filed his complaint at law in the Jefferson Circuit Court against said Gregley, alleging the above facts, and further alleging that he was the half brother and only heir of said Jacob Keith, and was entitled to his third interest in the lands; and praying for judgment for his interest in the land, and damages, etc.

Gregley answered, admitting his possession and claim under the will of Jane Keith, and all the facts alleged in the complaint except the alleged heirship of the plaintiff to Jacob Keith. He denied that the plaintiff was the heir of Jacob Keith, or had any right to the land.

John Keith filed an application to be admitted as a party to the suit, alleging that he was half brother of Jacob Keith, and his joint heir with the plaintiff, Marshall Jackson, and was entitled to the half of Jacob's third interest, as well as the interest he obtained with the plaintiff from Sanders Smith; and praying for a joint recovery with said plaintiff against the defendant, Gregley. His application was granted, and he was made a party to the suit.

Upon the trial, before the court, the proof showed, in addition to the above admitted facts, that George Jackson and Mary Jackson, the father and mother of the plaintiff, Marshall Jackson, were slaves in South Carolina, and were married as slaves usually were, and lived together as husband and wife. The plaintiff, Marshall Jackson, and the said Jacob Keith were born of the mother while she and her husband lived together. They were both recognized as their children until Jacob became about eight or ten years old. After that he was considered as the son of a stranger, Abram Keith. He resembled him, and took his name. The mother had no other children. The plaintiff, John Keith, was also the son of Abram, but by a different mother, and in no way related to the plaintiff, Marshall Jackson.

George Jackson died in South Carolina before the war. His wife and the plaintiffs moved to Arkansas just before the war. She died in 1864.

The court found: 1st. That John and Jacob Keith were both illegitimate children of the same father, by different mothers, and that John was not heir to Jacob. 2nd. That Marshall Jackson, being of the same mother as Jacob Keith, was his heir; "and inasmuch as John Keith has an interest in the land, by purchase from Sanders Smith, and no conflict between him and Marshall Jackson, the finding is for plaintiffs."

The defendant excepted and appealed.

*Bell & Elliott*, for appellant:

The only question in this case is the proper construction of *sec*. 2164, *Gantt's Dig.* The collateral branches are not embraced in the meaning of the Statute, but it is confined to the ascending and descending lines *on the part of the mother*.

Descents are governed by the common law, unless otherwise provided for. *Gantt's Digest, sec.* 2174.

Cites *Bingham on Descents*, 481; 30 *Missouri*, 268; 8 *B. Mon.*, (*Ky.*,) 606; 1 *Metcalf*, 635; 11 *Metcalf*, 294; 86 *Penn.*, 219; 8 *Ohio*, 280; and especially *Stevenson Heirs* v. *Sullivant*, 5 *Wheaton*, 207.

*McCain & Crawford*, for appellees:

1. Marriage is ecclesiastical as well as civil, and slaves could enter into a marriage contract so far as to enable them to live together without sin, and beget children who would be brothers and sisters. *Girod* v. *Lewis*, 6 *Martin La.*, O. S., 559; (3 *Martin La.*, p. 293;) *Exodus*, *Chap.* 21,

61—38

*verses* 1–6 ; *Bouv. Law Dict.*, *Connuburnium* ; *Justinian Code Lib.*, 3, *tit.* 7, *p.* 32.

The offspring of former slaves were legitimized and made capable of *inheriting* by *Act* 1867, *No.* 35, *p.* 99.

2. One illegitimate brother can inherit from another, *on the part of the mother*. *Gantt's Dig.*, *sec.*, 2164 ; *Reeve on Descent*, 96 ; 6 *Vermont*, 83 ; *Lewis* v. *Entsler*, 4 (*or* 5) *Ohio St.*, 354 ; 42 *Conn.*, 491.

*Stevenson Heirs* v. *Sullivant*, 5 *Wheat.*, 207, overruled by *Bennett* v. *Toler*, 15 *Gratt*, (*Va.*,) 625 ; *Garland* v. *Harrison*, 8 *Leigh*, (*Va.*,) 368.


OPINION.


EAKIN, J.   The questions presented by the record regard the legitimacy of persons of the African race, born in slavery, and the laws of descent applicable to them. There were no valid marriages amongst that class, in the slave States of America before their general emancipation near the close of the civil war, nor after that did any of the States take cognizance of former marriages amongst slaves, until provisions were made by Statute.

Jacob Keith, of the African race, died in 1878. Who were his heirs? His mother was an African slave in South Carolina, living and cohabiting with another slave, George Jackson, as man and wife, after such a marriage as was usual with slaves. Two children were the result of that relation ; complainant, Marshall Jackson, and the deceased, Jacob Keith. The parents recognized both as their children, although afterwards, when Jacob was about eight years of age, he came to be regarded as the son of a stranger, one Abram Keith. He resembled him, and assumed his name. The father, George Jackson, died in South Caro-

lina. The mother was brought to Arkansas with the children, and died in 1864.

It is plain that no marriage relation ever existed between Jacob's parents, and that at common law, dying ·without issue, he could have no heir. Unless our Statutes have otherwise provided, his estate becomes the subject of escheat and no one can sue for it.

Jacob has a reputed half brother by his reputed father, Abram Keith, by a different mother. He also claims as · heir, but he was not recognized as such, and takes no appeal. The question regards Marshall Jackson alone.

Our oldest Statutes upon this subject make a distinction between the questions of the *validity* of a marriage and the *legitimacy* of children, providing, in effect, that there may be legitimate children of void marriages. *Gantt's Digest, sec.* 2166.

The act has no reference to the marriages of slaves, but is noticeable as marking the early policy of the State to save the innocent offspring of void marriages from the inconvenience and odium of illegitimacy. One of the consequences of legitimacy is to enable one to inherit and transmit property generally.

1. DE-SCENTS: Construction of Statute: Illegitimate children.

But with regard to children professedly *illegitimate*, the same act provides that they shall be capable of inheriting and transmitting an inheritance *on the part of the mother*, "in like manner as if they had been legitimate of their mother." Legitimate children *of the mother* may transmit an inheritance to any and all collateral relations on the mother's side, who are of her blood, and so may her illegitimate children. This construction is too obvious to allow any serious consideration of the suggestion that the Statute was meant to confine inheritances of illegitimate children to or from the mother, or through her in the direct ascending or descending line. "On the part of the mother" means on

Gregley v. Jackson et al.

the mother's side of the genealogical tree.  The effect of the old legislation was meant to be remedied to cure illegitimacy in the innocent.  It amounted to this, that if there had been an actual marriage ceremony, the children should be legitimate for all purposes, although the marriage might be null.  If it were a case of simple bastardy, the children were to be considered, nevertheless, upon the same ground with regard to heritable blood, as if the father were dead, leaving no blood relations.  The father being supposed unknown, was simply ignored with all his blood, but no new laws of inheritance were intended, as to further line or limit.

2. No vest-ed rights in laws of inheritance.
After the war, the Legislature of the State, adjusting its laws to the natural results of the abolition of slavery, passed an act, specially applicable to persons of the African race who had been slaves, and their descendents.  One of the acts is retrospective in its operation, without any violence to contractual or other vested rights.  Laws of inheritance rest upon public policy, and during the life of the person owning the property may be changed at will.  No one has a vested right to be the future heir of any person not already dead, and there is no constitutional inhibition against changing the whole law of descents as to future deaths; and the right to inherit may be made to depend upon the former existence of relations which had ceased to exist when the law was passed.

3. DE-SCENTS: Construction of Statute of 6th February, 1867.
By the first section of an act passed December 20th, 1866, it was declared that the marriages of all persons of color, then living together as husband and wife, were valid, and their children legitimate.  This was, at once, felt to be a very incomplete settlement of the question of inheritances.  There were many thousands of men in the State belonging to the emancipated class, who were the offspring of former *quasi* marriages, which no longer existed when the law was passed, whose relations might acquire property and die

intestate. The law did not apply to such cases, of which this is one. To meet such cases, and to provide a more general and uniform system of inheritance, a law was drafted by one of the present members of this court, then a member of the Legislature, which was passed on the sixth of February, 1867. By the third section it was, amongst other things, provided, that in all cases where negroes or mulattoes have "*heretofore* been so cohabiting, as husband and wife, and may have offspring recognized by them as their own, such offspring shall be deemed in all respects legitimate, as fully as if born in lawful wedlock."

Both the parents of Jackson and Keith were then dead, but there had been the usual slave marriage between them, when living, and both had recognized the children, born of this cohabitation, as their own. It seems that common reputation, some eight or ten years after Jacob Keith's birth, attributed his paternity to another, but there is no evidence that this recognition by the parents, as first made, was ever retracted.

Laying aside, as no proper element for construction, the purpose and design of the member who drew the act, but, looking to its language, its remedial nature, and the circumstances of which the court can take cognizance, it would be a very narrow, and exceedingly literal construction of this act to exclude from its scope those children, whose parents, although then dead, had cohabited as husband and wife, and recognized them as their offspring. The act is not in derogation of the common law. It is in aid of it—applying its rules of inheritance to what was really a new people, amongst whom there had been formerly no marriages, no property, nor any rules of inheritance whatever. It had in view the complete homologation of all *legal* rights of all classes in the State, as distinct from *political* rights—the

latter coming through the Federal Constitution and acts of Congress.

. In any view of the case, whether considered simply as illegitimate children of one mother, or as Africans, the offspring of a former slave marriage, the brothers could inherit from each other, and Marshall Jackson, as held by the Circuit Court, became the heir of Jacob Keith.

Affirm the judgment.