### BLACK *v.* YOUMANS.

#### Opinion delivered October 4, 1915.

NEGROES—SLAVES—CHILDREN—LEGITIMACY.—The act of Feb. 6, 1867, providing that the children of former slaves shall be deemed legitimate under certain conditions, having never been repealed, controls in such cases and a child coming under the terms thereof will be treated as legitimate and entitled to inherit property from its father.

Appeal from Lafayette Chancery Court; *James M. Barker,* Chancellor; affirmed.

*R. L. Montgomery* and *Hal L. Norwood,* for appellants.

If section 3 of the act approved February 6, 1867, long since dropped from our statutes by the digesters, can be said not to have become inoperative by reason of non-usage (Endlich, Int. Statutes, § 495), the evidence does not warrant a decree for appellee. The intention of the act manifestly was that before the offspring of slaves should be deemed in all respects legitimate, the evidence must be clear and certain that such slaves did live together as husband and wife, and that they did not cohabit with others. In this case, before the court would have been authorized to declare George Williams to be the legal heir of his grandfather, Tom Bridges, the testimony must have clearly shown that Tom recognized and lived with Mandy as his wife, and that he did not occupy that relation with any other woman. The proof is practically uncontradicted that Tom had as many as four "wives," and that he had children by three of them.

*Searcy & Parks,* for appellee.

We rely upon the act of February 6, 1867, section 3. This act has been construed and upheld by this court. 32 Ark. 205; 38 Ark. 487.

The preponderance of the evidence establishes the fact that Tom Bridges lived with the woman, Mandy, during slavery, claimed her as his wife, that she was generally known both by white and black as Tom's slave wife, that by her he had a child, named Viney, the mother of George Williams, and that Tom claimed no other woman as his wife. Tom's acts of infidelity to his marriage vows can not affect the rights of his legitimate offspring 114 S. W. 781.

KIRBY, J. This is a controversy about a forty-acre tract of land in Lafayette County, Arkansas.

Tom Bridges, a negro, acquired it from the government by patent as a homestead, and died in possession in 1912, leaving him surviving his widow, Ellen Bridges, and sister, Dolly Black, who claimed to be his only heir. They conveyed the land on July 25, 1911, to R. L. Montgomery, who afterward conveyed it to Burton, one of appellants.

Appellee purchased the land from George Williams, a grandson of Tom, alleged to be the only heir of Viney Williams, the only child of Tom Bridges. And in this suit to cancel the deeds from Dolly Black and Montgomery to Burton as clouds upon the title, recovered a decree below from which this appeal is prosecuted.

It appears from the testimony that Tom Bridges, a slave, was married to Mandy Cryer, another slave, after the manner of slavery marriages, and lived with her as his wife until her death after emancipation, and that there was born to them an only child called Viney, who was recognized by them as their child, and that George Williams, appellee's grantor, was the only child and heir of said Viney Williams.

The testimony shows, too, not only that Viney Williams was recognized as their child by her parents but generally by all as the child of Tom Bridges and Mandy, who lived together during slavery as husband and wife and after the war until Mandy's death, and, although there is testimony tending to show that old Tom ranged widely from his own fireside and was rather promiscuous in his attention to other women, and from some of these excursions other children were born, of which he was the reputed father, we are not able to say that the chancellor's finding is clearly against the preponderance of the testimony.

Section 3, act February 6, 1867,* provides:

"That all negroes and mulattoes who are now cohabiting as husband and wife, and recognizing each other as such, shall be deemed lawfully married from the passage of this act, and shall be subject to all the obligations, and entitled to all the rights appertaining to the marriage relations; and in all cases where such persons now are, or have heretofore been, cohabiting as husband and wife, and may have offspring recognized by them as their own, such offspring shall be deemed in all respects legitimate, as fully as if born in lawful wedlock."

Said act, for some unknown reason, has not been carried into the digests of the statutes of Arkansas, but it has not been repealed, and the conditions requiring its passage for the protection of the children of slaves who could not legally marry, and the transmission of property acquired by them, have not passed, nor the reason therefor failed. Marriages between negroes, falling within its provisions, have been held valid, and children born of and recognized as their offspring by the parties have been held legitimate and capable of transmitting inheritances, and the statute has not become obsolete nor inoperative from long disuse. *Scoggins* v. *State,* 32 Ark. 205; *Gregley* v. *Jackson,* 38 Ark. 487.

Viney, the recognized child of this slave marriage, was legitimate, and her son, George Williams, inherited

*Act No. 35, p. 98, Session Laws of 1867 (Rep.).

the land in controversy from his grandfather, Tom Bridges.

The decree is affirmed.