## MEEKINS v. MEEKINS.

Opinion delivered July 6, 1925.

1. MARRIAGE—CURATIVE ACT—EXTRA-TERRITORIAL EFFECT.—Crawford & Moses' Dig., § 7040, which was approved, February 6, 1867, in providing that "all negroes and mulattoes who are now cohabiting as husband and wife and recognizing each other as such shall be deemed lawfully married," etc., had no application to negroes residing in another State at the date of the passage of the act.

2. MARRIAGE—BURDEN OF PROOF.—One who was born an illegitimate child, if he relies upon a subsequent marriage between his parents to entitle him to share in his father's estate, has the burden of proving when and where such marriage occurred.

Appeal from Ouachita Chancery Court, Second Division; *George M. LeCroy*, Chancellor; affirmed.

Appellant, Thomas J. Meekins, brought this suit in equity against appellees to cancel an oil and gas lease executed by Almer Meekins, Luvonia Yarbrough, and Carrie Cole to James Gould, trustee, and by him transferred to the Gulf Refining Company of Louisiana, and also to vest the title to an undivided one-fourth interest in the land embraced in said oil and gas lease in appellant.

It appears from the record that Reuben Meekins a negro, was born in Claiborne Parish, Louisiana, and lived there until sometime after the Civil War. He was a slave and raised a large family. About three years after the close of the Civil War Reuben Meekins moved with his family from Claiborne Parish, Louisiana, to Union County, Arkansas, and took with him his wife and children including a son named Isom Meekins. Almer Meekins, Luvonia Yarbrough and Carrie Cole are the legitimate children of Isom Meekins. Thos. J. Meekins is an illegitimate son of Isom Meekins. Isom Meekins was a slave in Claiborne Parish, Louisiana, until the emancipation proclamation was issued. Thomas J. Meekins is the illegitimate son of Isom Meekins and a negro woman with whom he lived. Subsequently Isom Meekins was legally married, and Almer Meekins, Luvonia Yarbrough and Carrie Cole are the children of that marriage.

Isom Meekins acquired title by patent from the United States government to the forty acres of land in controversy situated in Union County, Ark., and died intestate in said county and State owning the said forty-acre tract of land. He left surviving him his widow and the children named above. His widow died in January, 1916. Since her death the land in question has been in possession of the legitimate children of Isom Meekins, deceased, who are appellees in this case.

Thomas J. Meekins seeks to recover an undivided one-fourth interest in said land on the ground that, while he was born as an illegitimate child, he became legitimate

under the law by the subsequent acts of his father, Isom Meekins, and introduced evidence in support of his contention.

On the other hand, evidence for appellees tends to show that Thomas J. Meekins continued to be the illegitimate son of Isom Meekins, and was therefore not entitled to inherit from his father under the laws of either the State of Arkansas or of the State of Louisiana.

The chancellor found the issues as to both the law and the facts in favor of appellees, and the complaint of appellant was dismissed for want of equity.

*I. Stanley Pinkett* and *Avery M. Blount,* for appellant.

*J. W. Warren* and *Patterson & Rector,* for appellee.

HART, J., (after stating the facts.)   The principal reliance of counsel for appellant for a reversal of the decree is based upon the construction to be given to § 7040 of Crawford & Moses' Digest, which was an act approved February 6, 1867.   It reads as follows:

"All negroes and mulattoes who are now cohabiting as husband and wife, and recognizing each other as such, shall be deemed lawfully married from the passage of this act, and shall be subject to all the obligations, and entitled to all the rights appertaining to the marriage relation; and in all cases, where such persons now are, or have heretofore been so cohabiting as husband and wife, and may have offspring recognized by them as their own, such offspring shall be deemed in all respects legitimate, as fully as if born in lawful wedlock."

At the outset, it may be stated that the general rule is that the statutes of one State have no force except within the territorial limits and jurisdiction of that State. Therefore, it will be seen that the section of the statute copied above can only operate upon those living in this State.   Indeed, the statute does not by its terms purport to have any extra-territorial effect and to enable Thomas J. Meekins to inherit as the legitimate son of Isom Meekins the land left by the latter in Arkansas when

he died. The language of the statute is that all negroes who are now cohabiting as husband and wife and recognizing each other as such shall be deemed lawfully married from the passage of the act, which was the 6th day of February, 1867. This means negroes who are cohabiting as husband and wife and recognizing each other as such in the State of Arkansas at the date the act was passed.

It is true that this court has upheld the validity of the act in *Scroggins* v. *State,* 32 Ark. 205; *Gregley* v. *Jackson,* 38 Ark. 487, and *Black* v. *Youmans,* 120 Ark. 209; but it is apparent from the principles of law laid down in these decisions that the terms of the act did not have any extra-territorial effect, and that it applied only to negroes and mulattoes living in the State of Arkansas as husband and wife and recognizing each other as such at the date of the passage of the act.

In the case before us, while the evidence for appellant shows that Isom Meekins was living with the mother of Thomas J. Meekins in February, 1867, as husband and wife, it also shows that the parties were residing in the State of Louisiana. Therefore, the Arkansas statute copied above has no application to them.

In this connection it may be stated that Archie Barnes and J. T. Orr were both witnesses for appellant. Archie Barnes was a negro woman between seventy and eighty years old and had lived in Claiborne Parish, Louisiana, all of her life. According to her testimony, she had known Thomas J. Meekins all of his life, and he is about sixty or sixty-five years old. She knew his father, Isom Meekins, who was a slave. Isom Meekins, while a slave lived in Louisiana, and in the year 1866 moved on the place, where the witness resided, with a negro woman named Lucy, and during the same year Thomas J. Meekins was born. Isom Meekins admitted that Thomas J. Meekins was his son and treated him as such. Lucy lived with Isom Meekins, and they lived together as husband and wife.

J. T. Orr was a white man eighty years of age and a resident of Junction City, Louisiana. According to his testimony, he had been a resident of Claiborne Parish since 1849. He knew Isom Meekins and Lucy Johnson. Isom Meekins admitted that Thomas J. Meekins was his son and lived with Lucy Johnson as husband and wife in Claiborne Parish, Louisiana, at the time Thomas J. Meekins was born. Isom Meekins recognized Thomas J. Meekins as his son, and Thomas J. Meekins was born between the years 1867 and 1869 and as near as the witness could recollect in the year 1868.

According to the evidence for the appellees, Thomas J. Meekins was not born on the 6th day of February, 1867. In this connection it may be stated that we think the preponderance of the evidence shows that Thomas J. Meekins was not born until after February 6, 1867; but, even if it be conceded that he was born in 1866 as testified to by Archie Barnes, still according to her testimony he was born in Louisiana and resided there with his father, Isom Meekins, and his mother, Lucy Johnson in February, 1867. Hence, as above stated, the Arkansas statute relied upon does not apply because the parents of Thomas J. Meekins were not living in Arkansas at the date of the passage of the act, and the fact that they afterwards came to Arkansas with their illegitimate son did not bring them within the terms of the act.

If it be claimed that the status or condition of Thomas J. Meekins as to inheritance be determined by the laws of Louisiana, he is in no better position. It is true that the Supreme Court of Louisiana has decided that a slave marriage which existed at the date of the emancipation and where the parties afterwards continued their marital relations, might become legal and valid under certain conditions prescribed by the statute. *Pierre* v. *Fontentee,* 25 La. Ann. 617, and *Rowe* v. *Blackburn* (La.) 94 So. 325.

But, in the first place, it may be stated that the preponderance of the evidence shows that Thomas J.

Meekins was not born until after the date of the emancipation proclamation. Only one witness, Archie Barnes, testified that he was born before the close of the Civil War, and she appears to have been a very illiterate old woman. In contradiction to her testimony is the testimony of J. T. Orr, a white man, who appears to have been well educated and who has been a resident of Claiborne Parish, Louisiana since 1849. He stated positively that Thomas J. Meekins was born on either the farm of R. E. Thompson or George Johnson in Claiborne Parish, Louisiana. He further stated that Thomas J. Meekins was born between the years 1867 and 1869, and, as near as he could recollect, in the year 1868. His testimony is corroborated by the evidence of Almer Meekins, a son of Isom Meekins, and Crawford Meekins, a brother of Isom Meekins. It is true that Almer Meekins and Crawford Meekins think that Thomas J. Meekins was born in Arkansas; but they corroborate the testimony of Orr to the effect that Thomas J. Meekins was not born until after the close of the Civil War.

In the second place, it cannot be said that Thomas J. Meekins was legitimated by the subsequent marriage of his father and mother as provided by the Civil Code of Louisiana; or by notarial act as provided by that code. There is no proof in the record tending to show that Thomas J. Meekins was legitimated by the subsequent marriage of his father and mother, or by acts declaratory of their intention to legitimate him before a notary public, as provided by the Civil Code of Louisiana.

The undisputed evidence shows that Thomas J. Meekins was the illegitimate son of Isom Meekins and Lucy Johnson, and that their illicit connection and cohabitation continued after his birth in Claiborne Parish, Louisiana. This being so, it was incumbent upon him, if he relied upon a subsequent marriage between the parties, to show when and where it occurred. The reason is that the presumption would be that the connection between

the parties continued to be illicit until that presumption was overcome by distinct proof of marriage.

It follows that, in any view of the matter, the decision of the chancellor was correct, and the decree will therefore be affirmed.