Odell LUCAS *v.* Agnes HANDCOCK, Administratrix

78-314                                        583 S.W. 2d 491

Opinion Delivered June 25, 1979
(In Banc)

*Sharpe & Morledge, P.A.,* for appellant.

*Kinney & Easley,* by: *Knox Kinney,* for appellee.

JOHN A. FOGLEMAN, Justice. This appeal comes to us in the wake of *Trimble* v. *Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L. Ed. 2d 31 (1977). Odell Lucas, appellant herein, claims to be an heir of Luther Lucas, who died intestate at the age of 86 in St. Francis County on November 11, 1976. Appellant asserts that he was the illegitimate son of Herman Lucas, who predeceased his father Luther. Therefore, appellant contends that he is entitled to inherit from Luther in spite of Ark. Stat. Ann. § 61-141 (Repl. 1971), which he asserts is unconstitutional under *Trimble* v. *Gordon,* supra. Because we agree with appellant, we reverse that part of the judgment of the probate court denying him the right to share in the estate of Luther Lucas.

In *Trimble,* the United States Supreme Court struck down an Illinois statute denying the right of an illegitimate child to inherit from its father. The Illinois statute was held to violate the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. The statutes are so nearly identical in effect that it cannot be seriously urged that one can meet equal protection standards and the other not. Ark. Stat. Ann. § 61-141 (d) provides:

> An illegitimate child or his descendants may inherit real or personal property in the same manner as a legitimate child from such child's mother or her blood kindred; but such child may not inherit real or personal property from his father or from his father's blood kindred.

The Illinois statute involved in *Trimble* read:

> "An illegitimate child is heir of his mother and of any maternal ancestor, and of any person from whom his mother might have inherited, if living; and the lawful issue of an illegitimate person shall represent such person and take, by descent, any estate which the parent would have taken, if living. A child [who was illegitimate] whose parents inter-marry and who is acknowledged by the father as the father's child [is] legitimate."

The basic similarity of the statutes is further illustrated by

another subsection of the Arkansas act. Ark. Stat. Ann. § 61-141 (b), provides:

> If a man have a child or children by a woman, and afterward shall intermarry with her, and shall recognize such child or children to be his, such child or children shall be deemed and considered as legitimate.

As in Illinois, legitimate children inherit from both father and mother in Arkansas. Ark. Stat. Ann. § 61-131 (Supp. 1977), 61-132, -133, -134, -136 (Repl. 1971).

The United States Supreme Court held that the Illinois statutory classification limiting the right of an illegitimate child to inherit from its father bore no rational relationship to any legitimate state purpose. There is no way by which our statute can be distinguished from the statute involved in *Trimble,* so as to meet the equal protection requirements applied in *Trimble.*

The learned probate judge felt that this case should be distinguished from *Trimble* because of differences in factual backgrounds. The distinction made by him can best be understood by quoting his findings made at the conclusion of the hearing in the probate court, viz:

> Well, the court is fixing to decide the fact. The court finds that Herman Lucas was the natural father of Odell Lucas. But the court is not going to invalidate the inheritance statute of the state of Arkansas. This court has read the Trimble case, and the Trimble case involved a substantial relationship between the mother and father which they had lived together for some time and held themselves out as husband and wife, and it was on that factual basis that it was handed down. Unless there is something more, this court will have to declare this man is not entitled to inherit, and that is the Arkansas Law. If you folks would do the right thing, you ought to let him in and give him, his share. That would be the fair thing for you to do.

In the order entered after the hearing, the court had this to say:

The Court finds as a matter of fact that Odell Lucas is the natural child of Herman Lucas.

The Court further finds that the rule in *Trimble*, supra, is not applicable to the facts in the case at bar. In Trimble, the relationship between the father and mother of the illegitimate child was an established one, as opposed to being a casual relationship. In Trimble, the father and mother lived together for an extended period of time. In addition, they held themselves out to the community as husband and wife. On the contrary, in the case at bar, the relationship between Herman Lucas and Lou Willie Garrett was a casual one. They never lived together at all. They never held themselves out to the community as husband and wife. There is no substantial evidence that they had more than what could be termed a very casual relationship. On the basis of these facts, this Court holds that the provisions of the *Ark. Dig. Stats. 61-141*, as applied to the facts in the case at bar, are constitutional. It may be pointed out here that our present inheritance code was re-enacted in 1969, and therefore represents a fairly recent clear expression of legislative intent.

We cannot agree that a distinction in the application of *Trimble* can be made on the basis of factual background. The Illinois act was not held to be unconstitutional as applied to Deta Mona Trimble, the illegitimate child who was denied the right of inheritance from her father by the Illinois courts in *Trimble*. The United States Supreme Court held that act unconstitutional on its face. The *Trimble* majority referred to the factual background only to "graphically illustrate the constitutional defects" of the section of the Illinois statute in question. The majority in *Trimble* remarked that "Hard questions cannot be avoided by a hypothetical reshuffling of the facts." Although the facts here are not hypothetical, they cannot be considered as governing on the basic question of constitutionality of the statute.

The most that could be made of the factual background in this case is to bring into question the standing of Odell Lucas to raise the question of constitutionality of the statute.

In a long line of cases, we have held that one as to whom a statute does not have any adverse application cannot question its constitutionality. Even though this is a sound rule to which we should continue to adhere, we do not see how we could apply it in cases in which an attack is based upon the equal protection clause of the Fourteenth Amendment to the United States Constitution on the ground that a statute is underinclusive, or for that matter, to the facts of this case. In *Orr v. Orr*, 440 U.S. 268, 99 S. Ct. 1102, 59 L. Ed. 2d 306 (1979), the United States Supreme Court considered a similar question as going to the jurisdiction of that court, in spite of the fact that the parties had not raised the question and the state courts from which the appeal had been taken had not considered the matter. The court found that William Orr had standing to make an equal protection attack upon the statute as underinclusive, even though he might not benefit from a favorable ruling, since his constitutional attack afforded his only promise of relief otherwise totally barred. The court relied considerably upon statements in *Linda R.S. v. Richard D.*, 410 U.S. 614, 93 S.Ct. 1146, 35 L. Ed. 2d 536 (1973), where there was a want of standing to obtain an injunction to require prosecution of the father of an illegitimate child for nonsupport, because payment of support as a result of a prosecution causing the father to be jailed was only speculative, at best. But in *Orr*, the court pointed out that in *Linda R.S.*, it had posed the threshold question to be answered as whether the appellant had "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which [the] court so largely depends for illumination of difficult constitutional questions." quoting from *Baker v. Carr*, 369 U.S. 186, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962). Although there are compelling reasons for adherence to our existing rule on standing to raise constitutional questions, it would be unthinkable for this court not to make an exception in a case such as this and to deny standing, when, on appellate review in the United States Supreme Court, an opposite result would be reached upon the basis of the *Baker* test. Appellant unquestionably meets that test.

Agnes Handcock filed a petition for her appointment as administratrix of the estate of Luther Lucas on January 7,

1977. In her verified petition, Odell Lucas was listed as an heir at law of Luther Lucas and his relationship to the decedent was stated to be "grandson." Upon this petition, she was appointed and letters of administration were issued to her. It was not until she filed her first and final account as administratrix that she questioned the right of appellant to inherit from Luther Lucas. In that account she stated that he was not a lawful heir of Luther Lucas. Appellant filed a response, praying that he be adjudicated an heir at law of Luther Lucas and that appellee be ordered to distribute to him 1/12 of the estate, the share to which he would have been entitled if he had been the legitimate son of Herman Lucas. The chancellor's findings were made at the conclusion of a hearing on appellee's account and appellant's response. Appellee does not question the court's finding as to the paternity of Odell Lucas, and we find no basis upon which she might successfully do so. The evidence in support of that finding is overwhelming.

Appellant's mother, Lou Willie Garrett, was never married to Herman Lucas and never lived with him. As a matter of fact, it appears from the evidence that Herman never lived with any woman. On appellant's birth certificate, Herman Lucas was shown as appellant's father. Appellant, who was 37 years old at the time of the hearing, has used the surname Lucas all of his life. Appellant testified that, when he was six years old, Herman Lucas told him that appellant's name was Odell Lucas, that he always called Herman "daddy" and that Herman called him "son." He said that, when he was young, he had, for the most part, lived with his maternal grandmother or with Herman and that when he lived with Herman, Herman provided him with food and clothing, took him places and always introduced him as Odell Lucas. He said he lived with Herman during summer months and on weekends. Appellant stated that no one had ever questioned his relationship to Herman until this proceeding. According to appellant, when he was 18 years of age, he discussed with Herman the relationship shown on appellant's birth certificate and Herman had no objection. Appellant testified that Herman made appellant "administrator over his insurance" and it is undisputed that appellant made the funeral arrangements when Herman died in 1971 or 1972 and

paid the expenses from the proceeds of insurance on Herman's life, of which appellant was the beneficiary.

The siblings of Herman who testified gave conflicting testimony as to whether Herman Lucas had denied that he was the father of Odell and as to whether Odell had lived with Herman. A sister testified that Odell did "stay" with Herman "when his mama gave him away to my mother." She also said that her mother treated Odell "nice." Another sister said that Odell had lived with Luther only two days when Odell's mother "gave him to my mother."

Appellant's former wife testified in rebuttal. She said that Herman called her "daughter-in-law" and called her children by Odell his "grandkids" and said that Odell was his only child. She also said that Odell called Herman "dad" and that the children called Herman "granddad." According to her, during the nine years she was married to Odell, they visited Herman in East St. Louis frequently, sometimes for as long as a week, and that Odell was the favorite nephew of Herman's siblings.

On this overwhelming evidence, the *Baker* test as to standing was clearly met. Furthermore, under the trial court's finding and the evidence on which it was based, denial of inheritance to appellant would transgress the holding in *Trimble* which rejected the premise that the Illinois statute's classification could be justified in the interest of promoting legitimate family relationships by penalizing the child of an illegitimate relationship, in spite of the fact that a child cannot be responsible for his birth. Appellant had no more control over the casual illegitimate relationship of his parents than he would have had had they lived together over an extended period of time.

We fail to find any significance in the fact that § 61-141 was a recent expression of legislative intent. *Trimble* renders it insignificant. § 61-141 was adopted in 1969. The Illinois act involved in *Trimble* had been reenacted on January 1, 1976.

We also are unable to justify the subsection of our act in question on the basis of the compelling state interest in es-

tablishing certainty in disposition of a decedent's property at death and in stability in property titles. *Trimble* dealt with these questions and recognized their importance and validity, but nonetheless found statutory disinheritance of illegitimate children whose fathers die intestate to be unjustified.

It is interesting to note that the Court of Appeals of Kentucky, in an opinion written, but not handed down, before *Trimble* was decided, invalidated a statute having the same effect as our own, as violative of the Kentucky Constitution, even though that court, upon the authority of *Pendleton* v. *Pendleton*, 531 S.W. 2d 507 (Ky., 1976), mistakenly felt that *Labine* v. *Vincent*, 401 U.S. 532, 91 S. Ct. 1017, 28 L. Ed. 2d 288 (1971), mandated a rejection of the equal protection arguments advanced here and in *Trimble.* See *Rudolph* v. *Rudolph,* 556 S.W. 2d 152 (Ky. App., 1977). The Supreme Court of Kentucky, however, upon remand of *Pendleton,* beat a forced retreat from its original position by accepting the holding of *Trimble* with extreme reluctance and applying it to declare its statute invalid as a denial of equal protection under the Fourteenth Amendment. 560 S.W. 2d 538 (Ky., 1978).

Appellee also finds comfort in *Labine,* pointing out that the United States Supreme Court did not overrule *Labine.* This is true, but the decision of the Illinois Supreme Court rejecting the equal protection argument had rested upon *Labine.* See *In re Estate of Karas,* 61 Ill. 2d 40, 329 N.E. 2d 234 (1975); *Trimble* v. *Gordon,* supra. The four dissenters in *Trimble* also resorted to *Labine.* The majority, however, found *Labine* difficult to place in the pattern of that court's equal protection decisions and its precedential force limited by subsequent decisions. The majority distinguished *Labine* by the difference in the statutes involved, but our statute cannot be distinguished from the Illinois statute.

In the very recent case of *Lalli* v. *Lalli,* 439 U.S. 259, 99 S. Ct. 518, 58 L. Ed. 2d 503 (1978), only two of the four dissenters in *Trimble* seem to rigidly maintain the positions they took in *Trimble.*Two of the dissenters in *Trimble* joined in a plurality opinion in *Lalli,* upholding a New York statute quite different from the Arkansas, Illinois and Kentucky statutes in that it did not result in total disinheritance of all illegitimate

children, insofar as an intestate father's estate was concerned. One of the two *Trimble* dissenters who had joined in the plurality opinion took pains, in a separate opinion, to reject the view expressed by another *Trimble* dissenter, who stated, in an opinion concurring in the judgment in *Lalli*, that *Trimble* was now a derelict, explainable only because of the overtones of its appealing facts. The result in *Lalli* was affirmance of a judgment holding the New York statute valid, upon the authority of *Labine*. The plurality pointed out that the disqualification in the statute involved in *Trimble* was too broad to be constitutionally acceptable for a justifiable state purpose and pointed out many distinctions between the New York statute and the Illinois act.

An analysis of the positions taken in *Lalli* by the prevailing plurality and by the four dissenters, who would have held even the New York statute invalid, clearly indicates to us that *Trimble* remains healthy and vigorous and that *Labine* cannot be applied in this case, as appellee would have us do, however great our desire to do so might be. *Trimble* is clearly a case in which the final arbiter on the question of application of the Constitution of the United States has spoken, and it must be accepted as stating the law of the land, as our General Assembly found in the emergency clause of Act 1015 of 1979, by which Ark. Stat. Ann. § 61-141 (d) was amended, in an effort to meet the constitutional requirements mandated by *Trimble* and expounded upon in the *Lalli* plurality opinion.

We cannot give the amendatory statute retroactive effect. It is a matter of substantive, rather than procedural, law, so it has no application to pending cases, at least when there is no express declaration, or necessary implication from the language used, of legislative intent that it shall so apply. *Arkansas State Highway Com'n* v. *Hightower*, 238 Ark. 569, 383 S.W. 2d 279. Cf. *Harrison* v.*Matthews*, 235 Ark. 915, 362 S.W. 2d 704. See also, *Chism* v. *Phelps*, 228 Ark. 936, 311 S.W. 2d 297, 77 ALR 2d 329. There is, of course, a presumption against the retroactive application of a legislative act. *Snuggs* v. *Board of Trustees of Arkansas State Employees Retirement System*, 241 Ark. 402, 407 S.W. 2d 933; *Chism* v. *Phelps*, supra. Legislation will not be construed as retroactive when it may reasonably be construed otherwise. *Roberson* v. *Roberson*, 193 Ark. 669, 101 S.W. 2d 961.

These rules apply especially with reference to amendatory acts. The general treatment is stated by an outstanding authority. In Sutherland Statutory Construction, Vol. 1A, 200, § 22.36, the author states:

> In determining the effect of an amendatory act on transactions and events completed prior to its enactment, it is necessary to distinguish between provisions added to the original act by the amendment, provisions of the original act repealed by the amendment, and provisions of the original act reenacted thereby. In accordance with the rule applicable to original acts, it is presumed that provisions added by the amendment affecting substantive rights are intended to operate prospectively. Provisions added by the amendment that affect substantive rights will not be construed to apply to transactions and events completed prior to its enactment unless the legislature has expressed its intent to that effect or such intent is clearly implied by the language of the amendment or by the circumstances surrounding its enactment.

See also, *Koster v. Warren,* 297 F. 2d 418 (9 Cir., 1961); *In re Child's Estate,* 18 Cal. 2d 237, 115 P. 2d 432, 136 ALR 333 (1941).

There is no language from which a legislative intention that Act 1015 should have retroactive effect can be implied. By express declaration, the act is effective "from and after its passage and approval." The right of Odell Lucas to inherit was a right which accrued when Luther Lucas died. On a person's death, the rights of his heirs become vested and may not be impaired by subsequent legislation. 16 CJS 1198, Constitutional Law § 228a; *Arciero v. Hager,* 397 S.W. 2d 50 (Ky. 1965). Cf. *Gregley v. Jackson,* 38 Ark. 487; *Adamson v. Wolfe,* 200 Ark. 360, 139 S.W. 2d 674; *Purinton v. Purinton,* 190 Ark. 523, 80 S.W. 2d 651.

The General Assembly has recognized its responsibility to act in connection with recognized state interests involved in inheritance by illegitimates. It has been suggested by the dissenters in *Lalli* that a state might properly act by requiring

that, in a case such as this, paternity must be proved by clear and convincing evidence. We deem the elevated standard of proof to be appropriate in a case such as this. That standard of proof was met.

Since § 61-141 (d) is unconstitutional insofar as it prevents an illegitimate child from inheriting from its father or its father's blood kindred, we must consider the law in force at the time of the passage. *State* v. *Williams-Echols Dry Goods Co.*, 176 Ark.324, 3 S.W. 2d 340. There was an earlier statute to the same effect as those involved here. Ark. Stat. Ann. § 61-103 (1947). But that statute could not meet the test of *Trimble*. Since no statute in Arkansas has ever permitted inheritance by an illegitimate child from its father, we must then turn to the common law, which has been the basic law of Arkansas, at least since statehood. Ark. Stat. Ann. § 1-101 (Repl. 1976); *Cordon* v. *Gregg*, 164 Or. 306, 97 P. 2d 732, 101 P. 2d 414 (1940);*Reese* v. *Stires*, 87 N.J. Eq. 32, 103 A. 679 (1917); 10 CJS 109, Bastards, § 24a; 10 Am. Jur. 2d 948, Bastards, § 146. The right of an illegitimate child to inherit from his father has always depended upon statute. *Gregley* v. *Jackson*, 38 Ark. 487; 10 CJS 109, Bastards, § 24a; 10 Am. Jur. 2d 948, Bastards, § 145. See also, *Wilson* v. *Storthz*, 117 Ark. 418, 175 S.W. 45.

The common law rule prohibiting the illegitimate child from inheriting from the father would itself deny equal protection to the illegitimate child under the *Trimble* test. For this reason, we cannot deny the right of inheritance to one in whom the right has vested, i.e., by the death of the ancestor. Assuming, however, that the common law has been the governing law on the right of a bastard to inherit since Arkansas became a state, we must determine the effect of a change in the common law. If not a rule of property, it is of that nature. It certainly has a bearing on devolution of titles. We must give appropriate attention to the effect of overturning a rule of law that even predates our statehood. This case presents no difficulty. Appellant was recognized as an heir at the time of the decision in *Trimble*. His right to inherit was not questioned until nearly a year after *Trimble* was decided. The evidence in this case that he was the son of Herman Lucas and the grandson of Luther Lucas is certainly clear, cogent

and convincing. Certainly, he and all others in a like position should be permitted to inherit. The history of the common law is that it is developed on a case by case basis. Generally speaking we will take this approach. Of course *Trimble* does not apply if the child born out of wedlock has been legitimatized in any manner, or has been designated as an heir pursuant to Ark. Stat. Ann. § 61-301 (Repl. 1971).

In many cases, the illegitimate who seeks to use *Trimble* and this decision as a springboard to establish his right to inherit will be barred by the statutes of limitations, laches, or estoppel. The present statute also establishes appropriate safeguards on the legitimate state interest recognized in both *Trimble* and *Lalli*. But it was not in effect when the case was tried and the state's interest in the stability of titles and the orderly disposition of decedent's estates is no less important now than it will be on the effective date of the act. Still, since we cannot begin to anticipate the myriad factual situations and legal issues that may arise, we can only take the traditional common law approach and deal with them as they arise.

The judgment of the probate court is reversed to allow appellant to inherit as an illegitimate child, but otherwise is affirmed and the cause remanded for the entry of an appropriate judgment and for further proceedings consistent with this opinion.