R. W. LEWIS et al *v.* Carmen PETTY

80-278                                             613 S.W. 2d 585

Supreme Court of Arkansas
Opinion delivered March 30, 1981
[Rehearing denied April 27, 1981.]

*Gordon & Gordon*, by: *Allen Gordon*, for appellants.

*John Norman Harkey* and *Blair Arnold*, for appellee.

FRANK HOLT, Justice. The probate court determined appellee to be the illegitimate daughter of the intestate decedent, who was never married. The appellants are collateral heirs, who question this ruling. The trial court found there was clear, cogent and convincing proof that appellee, Carmen Petty, is the illegitimate daughter of the decedent Major William Lewis. Appellants insist that the court erred in finding this to be the correct test of the necessary proof. They argue that the degree of accuracy in this paternity action can only be assured by some form of the written acknowledgement of the putative father or a judicial determination during the lifetime of the parties.

Following *Trimble* v. *Gordon*, 430 U.S. 762 (1977), we held in *Lucas* v. *Handcock*, 266 Ark. 142, 583 S.W. 2d 491 (1979), that Ark. Stat. Ann. § 61-141 (d) was unconstitutional since it did not provide that an illegitimate child could inherit from the father; we would not give retroactive effect to Act 1015 of 1979, which amended the invalidated Act; that, as here, cases arising between the decision in *Trimble* and the effective date of the amended statute, would be decided on a case-by-case basis; and that the evidence in *Lucas* was clear, cogent and convincing that the appellant there was the illegitimate son of the decedent and he and others in a like position should be permitted to inherit. The present case clearly falls within this interim period. Therefore, the trial court correctly applied the quantum of proof which is necessary in this action.

Even so, appellants contend that the court erred in holding that the appellee had sustained her burden of proof by clear, cogent and convincing evidence on the issue of actual paternity. There was much testimony that Major Lewis had dated appellee's unmarried mother, now deceased, prior to appellee's birth in 1927. Appellee introduced

into evidence a certified copy of her birth certificate, signed by appellee's mother and listing Major Lewis as the father. The original was filed with the Bureau of Vital Statistics within a month after her birth in conformity with the existing law. School records reflected that appellee was enrolled as Carmen Lewis in 1941, and she was so entered on the Family Census filed in 1941. Her marriage license was issued in 1946 to Miss Carmen Lewis, and it was undisputed that this was the name she went by in the small rural community in which she was reared. Numerous witnesses, including some who are now nonresidents, testified in person or by deposition in corroboration of appellee's testimony that the decedent recognized her as his daughter, made gifts of money to her, paid a medical bill, purchased her clothing and shoes, and voiced affection toward her as his daughter. There was evidence of a similarity of appearance; that she and her children would visit Lewis annually; that she referred to the decedent as "daddy"; and he asked that her children be told they were his grandchildren. When Major Lewis died, appellee was notified by the wife of one of the decedent's nephews and attended the funeral along with other members of the family.

There was evidence adduced by the appellants that she was not regarded as Lewis' daughter and that she could have been anybody's child as her mother ran around with men quite a bit. Other witnesses testified that the Major either denied or was uncertain of her paternity. However, a nephew, who was reared by the decedent and is administrator of the estate, testified that he always considered appellee as the decedent's daughter and his cousin; when she visited them, she would call the decedent, he would come there, "hug" her, and she would call him "daddy;" she bore a resemblance to him; his wife notified her by telephone of Major Lewis' death; and she attended the funeral and sat with the family. He thought it was right that she share in the estate.

Upon a review *de novo*, we hold, as did the probate judge, that the appellee has established by clear, cogent and convincing evidence that she is the illegitimate daughter of the decedent.

We do not agree with appellants that the court erred in allowing testimony as to general reputation in the community on the issue of paternity. Our Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979), Rule 803 (19) provides a hearsay exception for "[r]eputation ... among members of his family ... or among his associates, or in the community, concerning a person's birth ... relationship by blood ... ancestry, or other similar fact of his personal or family history." See, also, Weinstein's Evidence, § 803 (19) [01] (1979). This is the same rule we previously followed. See *Daniels* v. *Johnson*, 216 Ark. 374, 226 S.W. 2d 571, 15 ALR 2d 1401 (1950), in which we approved the testimony of witnesses who had lived in the same community with the families involved and knew the community reputation as to their relationships. The witnesses here are long-time residents in the small rural community in which appellee was raised and knew her mother and Major Lewis.

Appellants' last contention is that the trial court erred in overruling their objection to the admissibility of the appellee's birth certificate. We disagree. Rule 803 (9) of the Rules of Evidence provides an exception to the hearsay rule for "records or data compilations, in any form, of birth ... or marriages, if the report thereof was made to a public office pursuant to requirements of law." Act 96 of 1913, in effect when this birth certificate was filed, established the State Board of Health, the Bureau of Vital Statistics and State and Local Registrars to register births. Section 11 of that act stated any copy of a birth record when properly certified by the State Registrar shall be *prima facie* evidence in all courts and places of the facts therein stated. No challenge was made at trial, nor is one made now as to the authenticity of the certificate.

Affirmed.