Andrew A. ROQUE *v.* Deborah Ann FREDERICK

80-310                                   614 S.W. 2d 667

Supreme Court of Arkansas
Opinion delivered May 4, 1981

*Jones & Reynolds*, by: *Ray A. Reynolds*, for appellant.

*Esther M. White* and *Putman, Gallman & Dickson*, by: *W. B. Putman*, for appellee.

DARRELL HICKMAN, Justice. This is a case concerning an illegitimate child and the legal rights that surround such a child. The specific question before us is whether the putative father of an illegitimate child has the right to a hearing in county court on his petition to have reasonable visitation with that child. We hold that he does have the right to such a hearing. Our decision is rendered in this case without regard to the effect of Acts 664 and 665 of 1981 which will, no doubt, be a determinative factor in any cases arising after their effective dates.[1]

---

[1]Since the briefs were filed in this case the General Assembly passed two acts that relate to the subject of this case. Act 664 grants to any man the right to file a petition for a determination of paternity. Act 665 provides that a man who has been declared the father of an illegitimate child may petition for custody of the child. The Acts will apparently be effective July 17, 1981.

There is no dispute over actual paternity in this case since the parties agree that the appellant, Andrew A. Roque, is the father of the child. Roque and the mother, Deborah Ann Frederick lived together intermittently in California before and after the child was born in 1977. They were never married. After the child was about five months old the parents separated and have remained so since. After separation Roque began paying support to Frederick for the child. First he paid $150.00 a month for about seven months; then $200.00 a month for about eight months. During this time Roque regularly visited the child. There has never been a legal determination of paternity.

Frederick moved to Arkansas with the child and they have remained here. Roque, a California resident and a practicing physician, filed a petition in the County Court of Washington County seeking a legal declaration that he is the father of the child and asking for reasonable visitation privileges. He offered to pay support for the child. Frederick resisted Roque's right to file such a petition or have visitation privileges. When Frederick admitted in a deposition that Roque was the father and had supported the child, Roque filed a motion for summary judgment. Frederick countered with a motion to dismiss Roque's petition, claiming that Roque lacked standing. The county court ruled that Roque's petition must be dismissed because Arkansas law does not permit a father to file such a petition, that right being granted only to a mother. On appeal to the circuit court the case was considered *de novo* and the same conclusion was reached.

Roque's argument on appeal to us is based on the Equal Protection and Due Process Clauses of the United States Constitution. He argues that the Arkansas statutes granting mothers the right to file a petition against a man to have him declared the father but not granting a father the right to file a suit establishing his own paternity violates the Equal Protection Clause. This argument is based on cases which have struck down other unjustifiable gender-based statutes. See *Orr* v. *Orr*, 440 U.S. 268 (1979); *Hatcher* v. *Hatcher*, 263 Ark. 681, 580 S.W. 2d 475 (1979). Roque also argues that if Arkansas law prohibits him from even a hearing on the

question of paternity and visitation, it violates the Due Process Clause of the United States Constitution.

Frederick's argument is based on the common law and the Arkansas statutes. She cites two principles as controlling: the mother, not the putative father, of an illegitimate child is bound to maintain it, *Davis* v. *Herrington*, 53 Ark. 5, 13 S.W. 2d 215 (1890); there is no common law duty for the father of an illegitimate child to support it and since there is no duty there are no common law rights in the father. *Eborn* v.*Podraza*, 51 Ill. App. 3d 816, 367 N.W. 2d 300 (1977). Frederick also relies on the specific language of Ark. Stat. Ann. § 34-702 (Repl. 1962). This statute begins: "On complaint made to the county court by *any woman resident of the county* ..." [Emphasis added]. That statute and others provide that the county court can determine paternity and require a father to support the child. Ark. Stat. Ann. § 34-706 (Repl. 1962). The only reference in the statutes to visitation is made in Act 621 of 1979. It provides that *when* paternity is determined and the father *is ordered* to make periodic support payments the county court may grant reasonable visitation rights to the father. Frederick argues that Roque has no right to file a petition to determine paternity and therefore no right of visitation exists.

Nowhere in these statutes, or any others relating to bastardy proceedings, is there any mention of the right of a man to file a petition in county court to have paternity declared in his favor. There is no mention of any right of a father to visit his child except as provided for in Ark. Stat. § 34-715 (Supp. 1979). (See Footnote 1.)

The law concerning illegitimate children and the rights of the natural parents of such children has changed in recent years. For centuries the laws have been harsh. For example, in the Old Testament there is a law that for ten generations "No bastard shall enter the Assembly of the Lord." Deuteronomy 23:2. The law has been harsh for perhaps two reasons: to punish those who go against society and to foster the state of marriage. Even so the result has been that the child usually bears the brunt of social and legal discrimina-

tion, not the parents who committed the moral and legal wrong.

The law has changed because it must. Whatever wrongs the parents did are no fault of the child, and whatever wrong the parents did should not forever deny them the privileges that other parents enjoy. People should be allowed to acknowledge their mistakes and try to rectify them. So the law has changed from discrimination against illegitimate children and unwed parents to a more tolerant view.

Within the last few years the United States Supreme Court has struck down state laws which prohibit an illegitimate child from inheriting property from his father, while permitting inheritance from the mother. *Labine* v. *Vincent*, 401 U.S. 532 (1971); *Trimble* v. *Gordon*, 430 U.S. 762 (1977). Arkansas had a similar law and we followed the *Trimble* decision in declaring the Arkansas law unconstitutional in *Lucas* v. *Hancock*, 266 Ark. 142, 583 S.W. 2d 491 (1979); *Frakes* v. *Hunt*, 266 Ark. 13, 583 S.W. 2d 497; and *Lewis* v. *Petty*, 272 Ark. 250 (1981).

Fathers of illegitimate children do have certain rights. In *Lipsey* v. *Battle*, 80 Ark. 287, 97 S.W. 49 (1906), we found that the father of an illegitimate child had rights superior to that of a stranger in custody disputes over the child. In *Lee* v. *Grubbs*, 269 Ark. 205, 599 S.W. 2d 715 (1980), we upheld a probate court order that granted care and control over a child to the putative father. The mother resisted the claim.

Other states have recognized certain basic rights in fathers of illegitimate children, either as a matter of equal protection or due process of law. *State* v. *Edwards*, 574 S.W. 2d 405 (Mo. 1978). The Missouri Supreme Court found that a Missouri law which denied putative fathers any opportunity for a hearing on their rights in a custody case violated the due process and equal protection guarantees of the Fourteenth Amendment to the United States Constitution. In the case of *In re R.,* 119 Cal. Rptr. 475, 532 P. 2d 123 (1975), *cert. denied* 421 U.S. 1014 (1975), the Supreme Court of California recognized that the interest of an unwed father in his children "is not only cognizable but also of such sufficient

substance to warrant deference except when the deprivation comports with equal protection and due process requirements." The California Court struck down a statutory presumption which denied an unwed father the right to offer evidence that he was the father of the child and, therefore, entitled to consideration regarding custody.

In *Stanley* v. *Illinois*, 405 U.S. 645 (1972), the United States Supreme Court examined an Illinois law which effectively prohibited a putative father from consideration in a custody hearing regarding a child. The Court recognized that such a father had "cognizable and substantial" interests in the "companionship, care, custody, and management of his children." In recognizing those rights the Court dealt at length with the state's special interest in promoting marriage and in assuring the preservation of the family. The *Stanley* Court said:

> The court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed "essential," *Meyer* v. *Nebraska*, 262 U.S. 390 (1923), "basic civil rights of man," *Skinner* v. *Oklahoma*, 316 U.S. 535, 541 (1942), and "[r]ights far more precious ... than property rights," *May* v. *Anderson*, 345 U.S. 528, 533 (1943). "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Prince* v. *Massachusetts*, 321 U.S. 158, 166 (1944). The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment ... [citation], the Equal Protection Clause of the Fourteenth Amendment, ... [citation], and the Ninth Amendment, ... [citation].
>
> *Nor has the law refused to recognize those family relationships unlegitimized by a marriage ceremony.* The Court has declared unconstitutional a state statute denying natural, but illegitimate children a wrongful-death action for the death of their mother, emphasizing that such children cannot be denied the right of other

children because familiar bonds in such cases were often as warm, enduring, and important as those arising within a more formally organized family unit. *Levy* v. *Louisiana*, 391 U.S. 68, 71-72 (1968). *"To say that the test of equal protection should be the 'legal' rather than biological relationship is to avoid the issue. For the Equal Protection Clause necessarily limits the authority of a State to draw such 'legal' lines as it chooses." Glona* v. *American Guarantee Co.*, 391 U.S. 73, 75-76 (1968). [Emphasis added.]

The Court held that Illinois was barred as a matter of both due process and equal protection from taking custody of the children of a putative father absent a hearing and a finding the father was unfit.

In *Quilloin* v. *Walcott*, 434 U.S. 246 (1978), the Court defined further the rights of a putative father. The Court held that the rights were not the same as those of a "legal" father and therefore a putative father was not necessarily entitled to equal treatment in every case. In *Quilloin*, the putative father had never sought to be declared the father for eleven years; he had provided support only on an irregular basis. Even so, the Court held that the putative father was entitled to notice and a hearing when the child was being considered for adoption.

We can only conclude that fathers of illegitimate children have basic rights when the welfare of their children is concerned. Those rights are not absolutely definable nor can they be. In every case that we have cited, the father has shown an interest in the child; before seeking legal relief the father sought to accept some responsibility for the child and was able to show that a relationship of some kind existed between himself and the child.

In this case Roque will have no rights unless he can be declared the father, a fact this is undisputed. Both parties acknowledge that he is the father; it is undisputed that he has supported and visited the child. In such circumstances, can Arkansas law deny him any right to have even a hearing on his request to visit his child? Not according to *Stanley* v. *Illinois, supra*, and *Quilloin* v. *Walcott, supra*.

Where can Roque have a hearing? The mother argues not in county court since the statutes do not permit it. We held in *Rapp* v. *Kyzer*, 260 Ark. 656, 543 S.W. 2d 458 (1976), such a request could not be heard in chancery court. This is not a guardianship proceeding as was the case of *Lee* v. *Grubbs, supra*. Certainly it is not a civil lawsuit that ought to be filed in circuit court.

The only logical and indeed the proper forum is county court. The constitution explicitly places jurisdiction in that court in "*all* matters relating to ... bastardy." Ark. Const. Art. 7, § 28. [Emphasis added.]

We have not addressed all the relative rights of a putative father. Custody is not before us, only a request for a paternity declaration and visitation rights. Furthermore, we do not have a case where paternity is disputed or where a putative father has never shown an interest in a child.

The judgment of the circuit court is reversed with directions to reinstate the petition of Roque and grant him a hearing in the county court regarding his petition for paternity and visitation. Roque's request for visitation privileges will require the consideration of numerous factors. The most important factor is the best interest of the child. *Quilloin* v. *Walcott, supra; Rothstein* v. *Lutheran Social Serv.*, 405 U.S. 1051 (1972). Also, the court must consider the past relationship between the parents of the child and the relationship that may have existed between the father and the child. Whether a father has shown any concern or feeling for a child should be considered, as well as whether the father has supported the child in the past or to what extent he will support the child in the future. Apparently it is the judgment of the General Assembly that visitation should not be granted unless support is ordered. Ark. Stat. Ann. § 34-715 (Supp. 1979). There is nothing wrong with that premise. These are all matters that should be considered when a hearing is held.

Reversed and remanded.

HOLT, J., not participating.