VILLAGE MARKET, INC. *v.* STATE FARM GENERAL
INSURANCE COMPANY

97-702                                    970 S.W.2d 243

Supreme Court of Arkansas
Opinion delivered June 11, 1998

*Warner, Smith & Harris, PLC*, by: *G. Alan Wooten*, for appellant.

*Jones, Jackson & Moll, PLC*, by: *Randolph C. Jackson* and *Jay Kutchka*, for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant, Village Market, Inc., a grocery-store operator in Fort Smith, suffered damage to compressors in one of its freezer racks. It incurred repair and replacement expenses, and claimed a loss on a business policy issued by appellee, State Farm Insurance Companies. State Farm denied the claim, and Village Market initiated an action in circuit court to recover damages under the policy as well as the statutory penalty. State Farm moved for summary judgment, arguing that Village Market failed to comply with conditions precedent under the policy — to provide it with prompt notice of the loss and to retain the damaged property for its inspection. The trial court granted summary judgment to State Farm, and additionally awarded attorney's fees to State Farm. Village Market appeals both rulings. We find no error and affirm.

In its complaint, Village Market alleged that on July 1, 7, and 11, 1995, it suffered damage to various refrigerator compressors as a result of a power outage. Rick Srygley, Village Market's owner, was told on July 1 that lightning may have struck the building, but thought nothing of it at the time because he received no contemporaneous reports of any problems. Approximately four weeks later he received a bill from Benso, Inc., for approximately $20,000 in repairs. The record reflects three separate Benso bills for repairs, the first dated July 1 for $12,459.17, the second dated July 7 for $917.14, and the third dated July 11 for $6,417.42. After investigating the bills, Srygley discovered that lightning had hit the building and "blown these compressors." Paul Worley, the Benso repairman who performed the repairs, told Srygley that "it was a power surge that blew the system out." Srygley then immediately called Randy Bittle, his State Farm agent, who later turned in the claim. Srygley did not recall the specific day that he called Bittle, although the affidavit of Terry Don Rippy, the State Farm

claims representative who handled the matter, established that he received a call from Bittle about the claim on August 22, 1995.

Gene Egloff, the general manager of all three Village Market stores, received a call from Gene McAllister, the manager of the Fianna store, sometime around June or July of 1995 informing him that the refrigeration system was down at the Village Market store at Market Trace Road. Egloff was aware that repair personnel from Benso were called out to examine and repair the damaged refrigeration units.

A "recorded statement"[1] reflected a conversation between Paul Worley and Terry Don Rippy. Worley had received a call about a refrigerator alarm at Village Market around July 1. He discovered two compressors electrically reading to ground, indicating a power surge or a power-related interruption. He recalled the store manager telling him there was lightning that night. Worley had to buy new compressors to replace the old ones — he obtained one in Springdale and the other in Tulsa. At the time that Worley was trying to locate new compressors, the damaged compressors were still at the store. After he replaced the compressors, he "traded [the damaged compressors] back in for core charge, core value." This exchange was with the manufacturer, Superior Supply in Fort Smith. He did not know the exact date that he turned the compressors back in, or what Superior did with them. The compressors needed to be replaced quickly to protect the product being refrigerated. Worley was called back to Village Market a second time and discovered the same problem with another compressor in the same rack. He replaced a "contactor" on three compressors, explaining that the contacts were not designed to take a big power surge.

On August 23, Terry Don Rippy called Village Market, and later received a call from Beverly Smith, Srygley's secretary. According to Rippy's affidavit, they discussed the claim and he asked to inspect the damaged property, but Village Market never made the subject property available for inspection. Rippy also

---

[1] State Farm objected to this evidence on hearsay grounds under Ark. R. Evid. 804. The trial court's order granting summary judgment provides no indication as to whether or not this evidence was in fact considered.

contacted Worley, who informed him that the damaged compressors had been exchanged for a "core change-out fee." Kenneth Benso, the owner of Benso, stated by affidavit that "[w]hen replacing a refrigeration compressor, if a customer requests that the damaged compressor be left behind until which time it could be inspected, such request would be honored. If such request were made, the customer would be invoiced for the cost of the new compressor, and would be credited for the exchange value of the damaged compressor at the time such compressor was picked up and then returned to Superior Supply Company for its exchange value." Benso had a company policy of preparing "teardown reports" of damaged compressors when requested.

John Butler, a Superior Supply employee, also submitted an affidavit. He stated that in July of 1995, Superior Supply gave Benso "full core exchange value" for three individual compressors. Superior Supply would give the "full core exchange value" for compressors which are received within two weeks of being replaced. "It is Superior Supply Company's policy that customers may request a tear down record before the damaged compressors are sent back to the Copeland Corporation, and Superior Supply Company will order such tear down record from Copeland Corporation. No tear down request will be made from Superior Supply Company to the Copeland Corporation unless Superior Supply Company is notified that such tear down request should be made." A "tear down record" evinced the disassembly of a compressor and the examination of the core, and was useful in determining the cause of damage to a compressor.

On September 29, 1995, Rippy sent Srygley a letter denying the claim. Following the instigation of Village Market's lawsuit against State Farm, State Farm moved for summary judgment arguing that Village Market violated its contractual duty to provide it with prompt notice in the event of a loss, and that it failed to give State Farm an opportunity to inspect the allegedly damaged property, both conditions precedent to recovery. The trial court entered an order granting State Farm summary judgment, finding that "[t]hat no genuine issue as to any material fact exists and that [State Farm] is entitled to judgment as a matter of law." The trial court later entered an order awarding State Farm costs

and a $5000 attorney's fee. Village Market appeals from both orders.

## I.  Summary judgment.

On appeal, Village Market argues that at the very least, fact questions exist as to whether it breached any of its duties to provide State Farm prompt notice or to retain the damaged property for inspection. Summary judgment is to be granted only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Wallace v. Broyles*, 331 Ark. 58, 961 S.W.2d 712 (1998), *supp. opinion on denial of reh'g*, 332 Ark. 189, 961 S.W.2d 712 (1998) (*per curiam*). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id*. On appellate review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id*. This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id*.

We need not reach the notice issue, as we hold that the trial court was correct in granting summary judgment to State Farm due to Village Market's failure to retain the damaged property for inspection. The policy at issue provided that Village Market had, among other things, the following duties in the event of a loss:

> 3.  Duties in the Event of Loss. You [the insured] must see that the following are done in the event of loss to covered property:
>
> * * *
>
> d.  take all reasonable steps to protect the covered property from further damage by an insured loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your emergency and temporary repair expenses for consideration in the settlement of the claim. This will not increase the limit of insurance;
>
> * * *

  f. permit us to inspect the property and records proving the loss;

\* \* \*

  j. Resume all or part of your business activities at the described premises as quickly as possible.

Another condition of the policy was that Village Market could not bring a "legal action" against State Farm "under this insurance" unless "there has been full compliance with all of the terms of this insurance[.]"

■ For reversal, Village Market engages in a comparison of various provisions of the policy, in particular subsection "j" requiring the insured to resume its business as quickly as possible, which it argues is inconsistent with the provision requiring it to set aside the damaged property. We disagree. The policy only requires Village Market to set aside the damaged property if "feasible." When viewing the evidence in the light most favorable to Village Market, the evidence still shows that Village Market could have set aside the damaged compressors. Benso would have honored a request to leave the damaged compressor behind for inspection. Superior Supply would have given full exchange value on the damaged compressors for up to two weeks following replacement. Exchanging the damaged compressors for their core value was not a prerequisite to obtaining the new ones. When Worley went to Springdale and Tulsa to purchase the new compressors, the old ones were still in place. It was not until after the compressors were replaced that he traded the old ones back in for core value. We also note that Village Market did not request a tear-down report for the damaged compressors, which it could have requested from either Benso or Superior Supply. Based on these facts, we hold that State Farm was entitled to summary judgment as a matter of law due to Village Market's failure to comply with its duty under the policy to set aside the damaged property and to make it available for State Farm's inspection.

## II. Attorney's fee.

Village Market next argues that the trial court erred in awarding State Farm attorney's fees under the general statute

authorizing attorney's fees in breach-of-contract claims, Ark. Code Ann. § 16-22-308 (Repl. 1994):

> In any civil action to recover on an open account, statement of account, account stated, promissory note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, or breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney fee to be assessed by the court and collected as costs.

Village Market argues that the attorney's fee matter should have been resolved using Ark. Code Ann. § 23-79-208 (Repl. 1992), which provides in full:

> (a) In all cases where loss occurs and the cargo, fire, marine, casualty, fidelity, surety, cyclone, tornado, life, health, accident, medical, hospital, or surgical benefit insurance company and fraternal benefit society or farmers' mutual aid association liable therefor shall fail to pay the losses within the time specified in the policy, after demand made therefor, the person, firm, corporation, or association shall be liable to pay the holder of the policy or his assigns, in addition to the amount of the loss, twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorneys' fees for the prosecution and collection of the loss.

> (b) The attorney's fee shall be taxed by the court where the same is heard on original action, by appeal or otherwise, and shall be taxed up as a part of the costs therein and collected as other costs are or may be by law collected.

> (c) Writs of attachment or garnishment filed or issued after proof of loss or death has been received by the company shall not defeat the provisions of this section, provided the company or association desiring to pay the amount of the claim as shown in the proof of loss or death may pay the amount into the registry of the court, after issuance of writs of attachment and garnishment in which event there shall be no further liability on the part of the company.

> (d) Recovery of less than the amount demanded by the person entitled to recover under the policy shall not defeat the right to the twelve percent (12%) damages and attorneys' fees provided

for in this section if the amount recovered for the loss is within twenty percent (20%) of the amount demanded or which is sought in the suit.

Village Market in turn directs us to cases where this court has rejected an application of section 16-22-308 to justify an award of attorney's fees. *See Stein v. Lukas*, 308 Ark. 74, 823 S.W.2d 832 (1992) (tort action of deceit); *Construction Mach. v. Roberts*, 307 Ark. 252, 819 S.W.2d 268 (1991) (interpleader actions); *Transportation Properties, Inc. v. Central Glass & Mirror*, 38 Ark. App. 60, 827 S.W.2d 667 (1992) (materialmen's lien under Ark. Code Ann. § 18-44-101). These cases are simply inapposite here. Village Market reads into section 23-79-208 a prohibition against the recovery of attorney's fees by insurers that is simply not there. In fact, the statute is utterly silent as to what an insurer may or may not recover should it prevail in a claim brought by the insured for failure to pay the loss. We decline to interpret this silence as legislative intent to prohibit such a recovery. An action by an insured to recover against an insurer for failure to pay a loss is no doubt contractual in nature. It is a civil action to recover damages due to breach of contract. As such, the insurer, as the prevailing party in such an action, is entitled to an attorney's fee under the plain language of section 16-22-308. We therefore affirm the attorney's fee award in the present case.

Affirmed.

ARNOLD, C.J., GLAZE and THORNTON, JJ., dissenting in part.

TOM GLAZE, Justice, dissenting in part. I disagree only with that part of the majority opinion awarding attorney's fees to State Farm General Insurance Company. The trial court awarded State Farm attorney's fees pursuant to Ark. Code Ann. § 16-22-308 (Repl. 1994), which I am of the opinion does not apply.

Section 16-22-308 is a general statute that was enacted in 1989 and provides for the recovery of attorney's fees in actions for breach of contract. In 1959, Ark. Code Ann. § 23-79-208 (Repl. 1992) was enacted, and specifically provides that, under certain circumstances, an *insured* may be awarded attorney's fees when his

loss claim covered by the policy is wrongfully denied or delayed by the insurance company. (Emphasis added.) Very clearly, § 23-79-208 is compiled under our laws regarding insurance policies and a Code subchapter designated "suits against insurers" — which is exactly what this court now has before it.

Section 23-79-208 does not authorize attorney's fees to insurers and such fees may only be awarded insureds when the insureds meet certain requirements described by the insurance statute. Arkansas's general statute § 16-22-308 (enacted after § 23-79-208) makes no mention of insurance policies so as to indicate that the General Assembly intended § 16-22-308 to cover insureds' suits against insurers.

In interpreting statutes, the rule is well settled that a general statute must yield when there is a specific statute involving the particular matter. *See Board of Trustees v. Stodola*, 328 Ark. 194, 942 S.W.2d 258 (1997). We are also guided by the controlling principle that attorney's fees incurred in the pursuit of civil actions are not awarded unless expressly provided for by statute or rule. *McQuillan v. Mercedes-Benz Credit Corp.*, 331 Ark. 242, 961 S.W.2d 729 (1998). Here, § 16-22-308 does not expressly allow an insurer attorney's fees when an insured loses his or her claim against the insurer, and I submit the General Assembly never intended an insurer should obtain attorney's fees in such circumstances.

Finally, I point out that a rather odd result occurs from the majority's decision to apply § 16-22-308 to an insured's lawsuit against an insurer. As previously indicated, a prevailing insured's right to attorney's fees (and penalty) under § 23-79-208 is limited and may be awarded only if the amount recovered for the loss by the insured is within 20% of the amount demanded or which was sought in the suit. If the insured fails to meet this requirement in § 23-79-208, the question then arises whether the insured might then request attorney's fees under § 16-22-308? In other words, if the insured failed to prevail under the terms in § 23-79-208 when requesting attorney's fees, may the insured obtain such fees as a prevailing party under § 16-22-308? An insurer, of course, cannot obtain attorney's fees under § 23-79-208 because the General

Assembly did not authorize such fees. However, the insurer may now obtain attorney's fees under § 16-22-308 without any restriction like the one required of an insured in § 23-79-208. Instead, all an insurer must do under § 16-22-308 is prevail in a lawsuit brought against it by an insured.

In my view, the General Assembly never intended to award attorney's fees to a state-regulated insurance company in cases where an insured seeks payment for a loss claim under his or her policy. In fact, § 23-79-208 restricts even an insured's right to attorney's fees to those limited circumstances where the insured has shown its insurer exercised unwarranted delay tactics when considering the payment of the insured's claim. *See State Farm Mut. Auto. Ins. Co. v. Thomas*, 316 Ark. 345, 871 S.W.2d 571 (1994). For these reasons and the ones addressed previously, I would reverse the trial court's award of attorney's fees to State Farm.

ARNOLD, C.J., and THORNTON, J., join this dissent.