**Tremayne SCOGGINS, Appellant,**

v.

**Evon M. MEDLOCK, Appellee.**

**No. 10–246.**

Supreme Court of Arkansas.

May 5, 2011.

Mays, Byrd & Associates, P.A., by: Arkie Byrd, for appellant.

Bennie O'Neil, for appellee.

DONALD L. CORBIN, Justice.

This is an appeal from an order of the Pulaski County Circuit Court, Ninth Division, dismissing a petition to establish paternity filed by Appellant Tremayne Scog-

gins. On appeal, Scoggins argues that the circuit erred in dismissing his petition pursuant to Arkansas Rules of Civil Procedure 12(b)(1) and (6) (2010). As this case is before us on a petition for review, our jurisdiction is pursuant to Arkansas Supreme Court Rule 2–4 (2010). We affirm.

The record reflects that Trayvon Scoggins died on June 9, 2006, after being struck by a cab. At the time of his death he was not yet fifteen months old. His mother, Appellee Evon M. Medlock, was the sole caregiver of the child from the time of his birth until his death. Scoggins was incarcerated in a federal penitentiary in Texas at the time of Trayvon's birth and death. Prior to his incarceration, Scoggins was romantically involved and lived with Medlock for approximately four years. According to Medlock, she and Scoggins had two children together, Trayvon, and a daughter, Tremaya.

Following Trayvon's death, Medlock filed a petition to be appointed special administratrix of her son's estate. In this petition, Medlock asserted that Scoggins was Trayvon's biological father; however, the petition further stated, with regard to beneficiaries of any settlement, that Scoggins was in prison and that no claim was being asserted on his behalf, unless it was determined that he was the legal father and entitled to benefits pursuant to Arkansas Code Annotated section 28–9–209 (Repl.2004).

Subsequent to her appointment, on August 6, 2006, Medlock filed a wrongful-death and survival action against Kevin L. West and his employer, Greater Little Rock Transportation, LLC, a.k.a. Yellow Cab Company. This action was filed in the Pulaski County Circuit Court, Twelfth Division. A settlement offer of $362,500

was made. On February 20, 2009, a hearing was held with regard to the settlement agreement. At that hearing, the circuit court determined that Scoggins should be represented by counsel and appointed him counsel over Medlock's objection.

On March 12, 2009, Scoggins filed a motion to establish paternity of Trayvon, stating that the child had been born out of wedlock but that he had acknowledged paternity. He further asserted that Medlock had acknowledged under oath that he was Trayvon's father. He filed a second petition on July 2, 2009, requesting DNA testing, pursuant to Arkansas Code Annotated section 9–10–108 (Repl.2009), to establish paternity of the deceased child.[1]

Medlock filed a motion to dismiss Scoggins's petition pursuant to Rules 12(b)(1) and (6). Therein, Medlock asserted that Scoggins had never taken any action to establish paternity prior to Trayvon's death. Medlock argued that section 9–10–108 contemplates DNA testing when the mother is deceased or when the father is deceased, but does not contemplate such testing when the child is deceased. Thus, argued Medlock, there was no basis upon which the circuit court could exercise its subject-matter jurisdiction over a deceased child.

The circuit court granted the motion to dismiss on the basis that Scoggins's petition asked the circuit court to do something outside the statutory powers granted by section 9–10–108. Specifically, the circuit court concluded as follows:

Because Arkansas Code Annotated § 9–10–108 does not contain a provision for establishing paternity of a deceased child through scientific testing, the Plaintiff has failed to state a claim upon

---

1. It was stipulated that the Arkansas State Crime Laboratory had enough genetic materi-

al to use to perform the DNA test.

which relief may be granted, and this court lacks subject matter jurisdiction. Therefore, the Defendant's Motion to Dismiss is granted.

Scoggins appealed the dismissal of his petition to the Arkansas Court of Appeals. The court of appeals, sua sponte, determined that the appeal was moot and dismissed it. *See Scoggins v. Medlock,* 2010 Ark.App. 401, 2010 WL 6738089. We subsequently granted Scoggins's petition for review. When we grant review of a decision by the court of appeals, we review the case as though the appeal had originally been filed in this court. *Hudak–Lee v. Baxter Cnty. Reg'l Hosp.,* 2011 Ark. 31, 378 S.W.3d 77.

We review statutory interpretation de novo, as it is for this court to determine the meaning of a statute. *Brown v. Kelton,* 2011 Ark. 93, 380 S.W.3d 361; *Dachs v. Hendrix,* 2009 Ark. 542, 354 S.W.3d 95. We are not bound by the circuit court's determination of the statute's meaning; however, in the absence of a showing that the circuit court erred, its interpretation will be accepted as correct on appeal. *See Racine v. Nelson,* 2011 Ark. 50, 378 S.W.3d 93. Our rules of statutory construction are well settled:

> The basic rule of statutory construction is to give effect to the intent of the legislature. Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. We construe the statute so that no word is left void, superfluous or insignificant, and we give meaning and effect to every word in the statute, if possible.

*Brown,* 2011 Ark. 93, at 3, 380 S.W.3d at 364 (quoting *Dachs,* 2009 Ark. 542, at 7, 354 S.W.3d at 100).

As his sole point on appeal, Scoggins argues that he has standing to conclusively establish paternity of Trayvon. Scoggins argues that there are some situations where the putative parent of an illegitimate child may have a right of inheritance, as demonstrated by section 28–9–209(e), which provides that paternity may be established by a court of competent jurisdiction, which in this instance, he argues, is the Ninth Division of the Pulaski County Circuit Court. Further, he argues, that Arkansas Code Annotated section 9–10–102(b) (Repl.2009) provides that a court may entertain an action to establish paternity "at any time."

Medlock asserts, as she did below, that Scoggins's petition for paternity is a request that the circuit court perform a function outside its statutory powers granted pursuant to section 9–10–108, as establishing paternity for a deceased child is not contemplated in the statute.

Arkansas Code Annotated section 9–10–104 (Repl.2009) provides that a putative father may file a petition to establish paternity of a child born outside of a marriage. Section 9–10–108 governs the actual paternity test and provides in relevant part as follows:

> (2)(A) Upon motion of either party in a paternity action when the mother is deceased unavailable, the trial court shall order that the putative father and child submit to or scientific testing for paternity, which may include deoxyribonucleic acid typing, to determine whether or not the putative father can be excluded as being the biological father of the child and to establish the probability of paternity if the testing does not exclude the putative father.
>
> . . . .

(3)(A) Upon motion of either party in a paternity action when the father is deceased or unavailable, the trial court shall order that the mother and child submit to scientific testing for paternity, which may include deoxyribonucleic acid typing, to determine whether or not the putative father can be excluded as being the biological father of the child and to establish the probability of paternity if the testing does not exclude the putative father.

Ark.Code Ann. § 9–10–108(a)(2)(A), (a)(3)(A).

 The circuit court was correct that the statute does not specifically contemplate DNA testing when the deceased party is the illegitimate child. This court has explained that if the language of a statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to rules of statutory interpretation. *Clemmons v. Office of Child Support Enforcement*, 345 Ark. 330, 47 S.W.3d 227 (2001). Only where the meaning is not clear, do we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. *Id.* Moreover, it is well settled that this court will not read into a statute a provision that was not included by the General Assembly. *See Potter v. City of Tontitown*, 371 Ark. 200, 264 S.W.3d 473 (2007).

Looking at the plain language of the statute, it clearly allows for DNA testing to establish paternity, even in situations where the mother or putative father is deceased. But, there is simply no provision for establishing paternity when it is the child who is deceased. Such a conclusion corresponds with the language in section 9–10–102(c) that venue of paternity actions, when a minor is involved, shall be in the county in which the juvenile resides. There is no county of residence for a deceased person. Moreover, this court has recognized that under the doctrine of *expressio unius est exclusio alterius*, the express designation of one thing may be properly construed to mean the exclusion of another. *Larry Hobbs Farm Equip., Inc. v. CNH Am., LLC*, 375 Ark. 379, 291 S.W.3d 190 (2009). Finally, the right to establish paternity is a policy issue, and we have stated many times that it is for the General Assembly, not the courts, to establish public policy.

 We are mindful of Appellant's assertion that he has a right to participate in a wrongful-death action involving Trayvon. It is true that Arkansas Code Annotated section 16–62–102(d) (Supp.1999) provides that the beneficiaries of a wrongful-death action include, among others, the surviving spouse, children, father, mother, brothers, and sisters of the deceased person. Where, however, it is a situation where the legal status has not been properly determined, no such right exists. This court has explained that where a cause of action did not exist at common law, but is entirely a creature of statute, it exists in the manner and form prescribed by the statute that created it. *Ludwig v. Bella Casa, LLC*, 2010 Ark. 435, 372 S.W.3d 792. Because we will not read words into a statutory provision that are not there, we affirm the order of the circuit court dismissing Scoggins's petition.

Circuit Court affirmed; Court of Appeals' opinion vacated.

Special Justice KATHY ALEXANDER joins in this opinion.

HANNAH, C.J., and Special Justice JOHN BELEW dissent.

BAKER and HENRY, JJ., not participating.

JIM HANNAH, Chief Justice, dissenting.

I respectfully dissent. Contrary to the majority opinion, Arkansas Code Annotated section 9–10–108 (Repl.2009) is not the exclusive means to determine paternity. According to the majority, the paternity of a child may only be determined during the lifetime of that child. The statutes cited by the majority do not so provide. Such an interpretation defeats the clear legislative intent under the wrongful-death statute that a father may be a beneficiary. *See* Ark.Code Ann. § 16–62–102(d) (Supp. 1999). If the majority is correct, the putative father of a child who dies leaving property may not share as an heir if paternity was not established before death. A putative father may not be a beneficiary under the wrongful-death statute. In *Roque v. Frederick*, 272 Ark. 392, 614 S.W.2d 667 (1981), this court recognized that putative fathers enjoy some due-process and equal-protection rights, but there is no consideration of those rights by the majority in the present case.

The majority has made no attempt to harmonize what it has concluded are conflicting statutes. Even though the wrongful-death statute declares Scoggins has a right to participate in the action, *see* Ark. Code Ann. § 16–62–102(d), the majority concludes that because the legal status of fatherhood was not determined before the child's death under the paternity statutes, "no such right exists."

Seemingly conflicting statutes must be read harmoniously where possible. *Great Lakes Chem. Corp. v. Bruner*, 368 Ark. 74, 83, 243 S.W.3d 285, 292 (2006). Nowhere in Title 9, Chapter 10 of the Arkansas Statutes Annotated relied upon by the majority is there a provision declaring that paternity must be established before a child dies. The majority reaches this conclusion based on its interpretation of these statutes; however, the statutes the majority relies on are longstanding and began as a means of obtaining support for living, illegitimate children. *See* Ark.Rev.Stat. Chapt. 24 (1847). Because the statutes relied on are intended primarily to provide support for living children, *see* Ark.Code Ann. § 9–10–102(e)(1) (Repl.2009) ("[T]he court shall grant a finding of paternity and establish support."), it is hardly surprising that the majority does not discuss determination of paternity after death. The conclusion that the death of the child was not anticipated is confirmed by the language in section 9–10–202(c) that venue of paternity actions involving a juvenile shall be in the county in which the juvenile resides. Clearly, this presumes the child is alive, which would be the case where future child support is at issue. However, a juvenile is not involved in the present action. The present action concerns property arising from the juvenile's death. The juvenile is deceased and is therefore not a party and will not be affected by the action. Section 9–10–102(c) can be harmonized with the wrongful-death statute because where the juvenile is deceased—in other words not involved—venue could be found to lie in the county where the plaintiff resides. *See* Ark.Code Ann. § 9–10–102(c). The majority errs in relying on the principle that a cause of action not existing under the common law exists in the manner and form prescribed by the statute. The paternity statutes cited by the majority are silent on determining paternity after death, but paternity has been determined by the trial courts in cases such as *Lucas v. Handcock*, 266 Ark. 142, 153, 583 S.W.2d 491, 496 (1979), without reference to the statutes the majority asserts alone permit a determination of paternity. In *Lucas*, paternity was proved in a proceeding on an heirship claim of an alleged illegitimate son of the intestate's deceased son. In this case, paternity was determined after the death of

the son. The reliance on *Ludwig v. Bella Casa, LLC,* 2010 Ark. 435, 372 S.W.3d 792 is misplaced. Paternity has been established outside the statutes cited by the majority.

Applying the narrow construction asserted by the majority, that a cause of action created by statute may exist only in the manner and form prescribed by the statute that created it, the wrongful-death statute clearly provides for Scoggins's participation. The paternity statutes relied upon by the majority do not speak at all to a paternity determination after the death of a child. The requirement of harmonizing the statutes precludes the majority from simply using silence to defeat the clear intent of the General Assembly in another statute. *See, e.g., Village Market, Inc. v. State Farm Gen. Ins. Co.,* 333 Ark. 552, 559, 970 S.W.2d 243, 248 (1998). The wrongful-death statute clearly provides that Scoggins may be a beneficiary if he is the father. Paternity has been determined by the courts of this state, as in *Roque,* where the issue of paternity must be decided as an ancillary issue to the action before the court. In *Roque,* the court held that the county court held jurisdiction to determine paternity. Under amendment 80 to the Arkansas Constitution, the circuit court now holds that jurisdiction.

In *White v. White,* 293 S.W.3d 1, 12 (Mo.Ct.App.2009), the Missouri Court of Appeals was faced with a similar issue as in the present case and correctly decided the paternity issue now before this court. The court noted first that the notion that the state's paternity act was the exclusive means of establishing paternity had been rejected. *Id.* Further, the Missouri wrongful-death act was found to permit a father to sue but that it did not specify how paternity was to be established. *Id.* The court held that the procedural re-

quirements of the paternity act could not be used to defeat a putative father's wrongful-death action. *Id.* Such petitions might be brought in the context of other actions as already discussed.

The majority's statutory interpretation holding that there is "no provision for establishing paternity when a child is deceased" errantly strips the circuit courts of their jurisdiction to determine paternity and overturns cases such as *Roque* and *Lucas.* Therefore, I dissent.

Special Justice JOHN BELEW, joins.