Joshua RAGER, by His Next Friend
Marjorie Rager; Matthew Rager, Jr.;
Yolanda Rager; and Marjorie Rager *v.*
Chandra Rager TURLEY, Administratrix

99-1465                                    27 S.W.3d 729

Supreme Court of Arkansas
Opinion delivered October 5, 2000
[Petition for rehearing denied November 9, 2000.]

*James Dunham*, for appellant Joshua Rager.

*John Van Cleef*, for appellants Cory Rager, Matthew Rager, Jr., Yolanda Rager, and Marjorie Rager.

*Mobley Law Firm*, by: *Jeff Mobley* and *Skelton & Steuber, P.A.*, by: *Kristin Steuber*, for appellee.

R OBERT L. BROWN, Justice. At issue in this case is the approval and distribution of a wrongful-death settlement in probate court pursuant to Ark. Code Ann. § 16-62-102(g) (Supp. 1999). The appellants are certain heirs and beneficiaries of the decedent, Thomas H. Rager, and an alleged illegitimate son of the decedent. The appealing beneficiaries and their relationship to the decedent are Cory Rager, a minor child; Matthew Rager, Jr., a brother; Yolanda Rager (now Pigeon), a sister; and Marjorie Rager, the mother.[1] These appellant-beneficiaries appeal the fairness and reasonableness of the settlement. Joshua Rager, by his adoptive parent who is also the decedent's mother, Marjorie Rager, appeals the decision of the probate judge to deny his participation in the wrongful-death settlement. The appellee is Chandra Rager (now Turley), who is the administratrix of the decedent's estate.

At issue in this appeal are three points: (1) the fairness and reasonableness of the wrongful-death settlement, which includes the question of the exclusion of Joshua Rager from participation; (2) the propriety of paying a $3,000 executor's fee from the settlement proceeds; and (3) the necessity for an evidentiary hearing regarding distribution of the settlement proceeds. We reverse and remand the probate court's decision with regard to Joshua, with directions that his claim that he is the illegitimate son of the decedent be transferred to the Pope County Chancery Court for a determination of paternity. We also reverse payment of the executor's fee from settlement proceeds. Because the reasonableness and fairness as well as distribution of the settlement hinges on Joshua's status as a child, we do not reach those issues at this time.

On August 15, 1994, Thomas H. Rager died intestate from injuries sustained in a vehicular accident, while driving an eighteen-wheeler truck for his employer, Tyson Foods, Inc. On August 18, 1994, his daughter Chandra Rager (now Turley), who was age

---

[1] Cory Rager is referred to at various times throughout the record as Corey Rager, Cory C. Rager, Cory Channing, and Cory Channing Rager.

nineteen, was appointed administratrix of his estate. His surviving beneficiaries allegedly included, in addition to the appellants, a second brother, Eugene Rager, and two children by his first marriage, Chandra Rager Turley (the administratrix) and Tommy Joe Rager. On August 19, 1994, Matthew Rager, Jr., objected to Turley's appointment as administratrix and petitioned for his own appointment. The probate court denied the petition.

In 1996, Joshua's natural mother died, and Marjorie Rager adopted him.

On August 29, 1997, Turley, as administratrix, filed an amended complaint in Pope County Circuit Court pursuant to the Arkansas Wrongful Death Act, on behalf of herself and all statutory beneficiaries in which she alleged that Razorback Disposal, Inc. and Thomas Gregory Hill wrongfully caused the death of the decedent by their gross negligence and recklessness. The action did not name Joshua as a beneficiary.

With the assistance of legal counsel, Turley, as administratrix, negotiated a settlement in the wrongful-death action. On January 6, 1998, she petitioned the probate court for approval of the settlement, as required by § 16-62-102(g), and for distribution of the settlement amount in fixed amounts to the beneficiaries. On January 8, 1998, appellants Marjorie Rager, Matthew M. Rager, Jr., Yolanda Pigeon, and Deborah Rager (now Matheson) as guardian of Cory C. Rager, filed their objection to the proposed settlement and distribution. On January 14, 1998, Turley filed a second petition for approval of the settlement, which would be funded by the purchase of life insurance annuity contracts.

On March 11, 1998, Joshua filed a motion to intervene in the petition for probate court approval of the settlement as a wrongful-death beneficiary and filed a claim to participate in the distribution. He was permitted by the probate court to intervene on March 12, 1998. On March 17, 1998, Turley, as administratrix, filed an objection to Joshua's intervention.

On April 3, 1998, the probate court held a hearing to decide whether Joshua had the right to participate in the negotiated settlement and whether the settlement itself was reasonable. The probate court began by considering the reasonableness of the settlement and said that it would decide collateral issues later. Turley testified in

favor of the settlement and distribution while Deborah Rager, Matthew Rager, and Marjorie Rager testified against it. At one point, Joshua's attorney objected to questions relating to Joshua's paternity which had been posed by Turley's attorney. The probate court gave this response:

> I think that's — I think that's right. I think just based on the fact that we are not going into that at this time, I'll sustain the objection. We will take that up at a later time.

The probate court did not receive or consider testimony regarding specific distribution to beneficiaries and said, "Well, I think that's going to hinge on what my decision is today."

On April 7, 1998, Joshua filed a brief regarding whether Arkansas law prohibited his participation in the division of the proceeds of any wrongful-death claim related to the decedent's death. He claimed that Arkansas statutes and caselaw did not foreclose his participation. For purposes of his brief, he assumed the following to be true:

- Joshua is the biological child of the decedent.

- Joshua's mother was never married to the decedent.

- The decedent never legitimized Joshua by paternity action or otherwise.

- Joshua filed no claim against this estate within one hundred and eighty days (180 days) of the death of the decedent.

- Joshua's date of birth is February 1, 1988.

- No notice was given to Joshua of the administration of the estate of the decedent.

On June 18, 1998, the probate court sent a letter opinion to counsel for the parties in which it concluded that because Joshua had filed no claim against the estate within 180 days of the decedent's death, as required by Ark. Code Ann. § 28-9-209(d) (1987), he was not entitled to share in the settlement proceeds. As a result, the court dismissed Joshua's petition to intervene. The court further concluded that the settlement was reasonable and approved it. On August 5, 1998, the probate court memorialized its letter opin-

ion in a final order and cited *Boatman v. Dawkins*, 294 Ark. 421, 743 S.W.2d 800 (1988), as additional support for its decision. In that order, the court also approved distribution of the settlement to the beneficiaries but stayed the order pending appeal.

The appellants appealed the final order to the court of appeals, and in a plurality decision that court, for varying reasons, affirmed the probate court's decision to deny Joshua the right to intervene in the wrongful-death settlement. *See Rager v. Turley*, 68 Ark. App. 187, 6 S.W.3d 113 (1999) (on the issue of Joshua's intervention, two judges of the court of appeals agreed with the lead opinion, two judges concurred with the result, and two judges dissented). This court granted appellants' petition to review on January 27, 2000.

■ When this court grants a petition for review of a case decided by the court of appeals, we review the case as if the appeal was originally filed in this court. *Youngman v. State Farm Mut. Auto. Ins. Co.*, 334 Ark. 73, 971 S.W.2d 248 (1998). We first address whether § 28-9-209(d) of the Probate Code controls the issue of Joshua's intervention in the approval of the wrongful-death settlement. That subsection fixes a limitations period and reads:

> (d) An illegitimate child or his descendants may inherit real or personal property in the same manner as a legitimate child from the child's mother or her blood kindred. The child may inherit real or personal property from his father or from his father's blood kindred provided that at least one (1) of the following conditions is satisfied and an action is commenced or claim asserted against the estate of the father in a court of competent jurisdiction within one hundred eighty (180) days of the death of the father[.]

Ark. Code Ann. § 28-9-209(d) (1987).

■ It is clear to this court, as it was to the court of appeals, that § 28-9-209(d) does not apply to claims to share in a wrongful-death settlement. By its terms, this subsection applies to a "claim asserted against the estate of the father" and not to claims to participate in wrongful-death settlement. Nor does the case of *Boatman v. Dawkins, supra*, which was relied on by the probate court, persuade us otherwise. In *Dawkins*, we affirmed the application of the 180-day limitations period to an illegitimate child's claim against her father's estate. Again, that is what § 28-9-209(d) contemplates — claims against a father's estate as opposed to claims against a wrong-

ful–death settlement where a petition to approve the settlement may occur more than three years after the father's death. We hold that the probate court erred in applying § 28-9-209(d) to Joshua's motion to intervene and in denying his request.

We turn then to the Wrongful Death Act and specifically to subsection (d) of that Act. *See* Ark. Code Ann. § 16-62-102(d) (Supp. 1999). Subsection (d) reads:

> The beneficiaries of the action created in this section are the surviving spouse, children, father and mother, brothers and sisters of the deceased person, persons standing in loco parentis to the deceased person, and persons to whom the deceased stood in loco parentis.

Thus, to qualify as a statutory beneficiary under this Act, Joshua must be a child of the decedent. Without that status, he has no standing to intervene in probate court regarding the wrongful-death settlement.

■ Our reading of the record in this case convinces us that the probate court held the issue of paternity relating to Joshua in abeyance until it first resolved the limitations issue. Having decided that the 180-day cutoff period did apply, the probate court apparently concluded that it was unnecessary to determine the paternity issue. The probate court, however, could not have resolved the paternity question in any event because it lacked the subject-matter jurisdiction to do. Our recent pronouncement on this matter is clear:

> The probate court has jurisdiction over the administration, settlement, and distribution of estates of decedents and the determination of heirship. *See* Ark. Code Ann. § 28-1-104 (1987). Chancery court, however, has concurrent jurisdiction with the juvenile division of chancery court in cases and matters relating to paternity. Ark. Code Ann. § 9-10-101 (Repl. 1993); Ark. Code Ann. § 16-13-304(b) (Repl. 1994); Ark. Const. amend. 67. In the instant case, the sole purpose of the action is to establish paternity. Consequently, the probate court was without jurisdiction to hear the matter.

*In Re Estate of F.C., Deceased*, 321 Ark. 191, 193, 900 S.W.2d 200, 201 (1995).

Joshua argues that we held contrary to this principle in *Standridge v. Standridge*, 304 Ark. 364, 803 S.W.2d 496 (1991). That, however, is incorrect. The *Standridge* case did involve the determination of beneficiary status for a child in connection with the approval of a wrongful-death settlement in probate court. But that decision did not require a decision relating to paternity. Rather, the decision of the probate court in *Standridge* in deciding whether the minor son (Johnny Thacker) was a beneficiary centered on whether the deceased husband of Johnny's mother (Standridge) stood *in loco parentis* to Johnny. We stated that there was no evidence in the record which indicated that Standridge intended to assume the duties and benefits associated with becoming Johnny's father and held that Johnny was not entitled to beneficiary status in the wrongful-death settlement.

■ Determining whether a decedent stood *in loco parentis* to a minor child is a far cry from deciding paternity. We hold that the probate court is without subject-matter jurisdiction to decide the paternity issue relating to Joshua.

That leaves us then with the issue of whether Joshua's claim as a child for purposes of the wrongful-death settlement is barred for some reason other than the 180-day limitations period. Stated differently, has Joshua's delay in asserting his rights as a child or having the issue of paternity decided foreclosed him from participating in this settlement? We think not.

Joshua was born on February 1, 1988, which means he was six at the time of the decedent's death and eight when his natural mother died and he was adopted by his alleged grandmother, Marjorie Rager, in 1996. He was ten when he moved to intervene to share in the settlement proceeds on March 11, 1998. It is true that no one on Joshua's behalf has assumed the burden of resolving the paternity issue. But it is also true that no steps were taken by Turley, as administratrix, to resolve the issue, though she became aware of Joshua's claim to be a beneficiary as early as March 11, 1998, if not before. There is also the point that the probate court apparently reserved a decision on paternity until it could decide the limitations issue, thus leading Joshua to believe that the paternity issue could be decided in probate court after the limitations hurdle was jumped. As already held in this opinion, the probate court had no subject-matter jurisdiction to decide paternity.

██ ██ Because of these facts, we conclude that Joshua is entitled to have the paternity issue decided and that he may share in the settlement proceeds if that decision is favorable to him. We, therefore, reverse the probate court's final order of approval and distribution and remand the case to that court. We further direct the probate court to transfer the matter of the decedent's paternity relating to Joshua to the Pope County Chancery Court for resolution. *See O'Fallon v. O'Fallon,* 335 Ark. 229, 980 S.W.2d 246 (1998); *Walker v. First Commercial Bank, N.A.,* 317 Ark. 617, 880 S.W.2d 316 (1994). Further, it is clear that the probate court erred in awarding executor fees from the wrongful-death settlement proceeds. The Wrongful Death Act provides that no debts of a decedent's estate shall be paid from a wrongful-death recovery. Ark. Code Ann. § 16-62-102(e) (Supp. 1999); *see also Douglas v. Holbert,* 335 Ark. 305, 983 S.W.2d 392 (1998). We reverse the probate court on that point.

Because the status of Joshua is as yet undetermined, we do not know whether he will share in the wrongful-death settlement. When Joshua's status is resolved, we direct that the shares of the beneficiaries be fixed by the probate court, taking into consideration the best interests of all beneficiaries, as required by Ark. Code Ann. § 16-62-102(g) and (h) (Supp. 1999). *See also Douglas v. Holbert, supra* (apportionment hearing ordered to be held in which all statutory beneficiaries would participate and present evidence of their respective rights to the wrongful-death proceeds).

Reversed and remanded.