Cite as 2022 Ark. App. 123

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-20-53

| | |
|---|---|
| EMERY BRANCH, INDIVIDUALLY AND AS THE DULY APPOINTED PERSONAL REPRESENTATIVE OF HER UNBORN CHILD, A.B.<br><br>APPELLANT<br><br>V.<br><br>ST. BERNARDS HEALTHCARE; ST BERNARDS HOSPITAL, INC., A/K/A ST. BERNARDS REGIONAL MEDICAL CENTER A/K/A ST. BARNARDS MEDICAL CENTER; ST. BERNARDS OB-GYN ASSOCIATES; MARTIN KOSCIUK, M.D.; SERENA VANCE, M.D.; BRITTANY SMITH, M.D.; SAMANTHA FRY, RN; CHRISTY SIMPKINS, RN; CALLIE WAGNER, RN (TALLEY); JAMES GILLEAN, RN; MADISON THOMASON, RN; PROASSURANCE INDEMNITY COMPANY, INC.; JOHN DOE 1; JOHN DOE 2; AND JOHN DOE 3<br><br>APPELLEES | Opinion Delivered March 9, 2021<br><br>APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT<br>[NO. 16JCV-18-1366]<br><br>HONORABLE RICHARD LUSBY, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**LARRY D. VAUGHT, Judge**

The appellant, Emery Branch, delivered a stillborn son, A.B., at St. Bernards Medical Center in Jonesboro on December 24, 2016. Shortly before the expiration of the two-year statute of limitations, Ms. Branch filed a complaint alleging medical negligence against several entities in the St. Bernards Healthcare system as well as the physicians and registered nurses who treated

her in the emergency and obstetrics units in St. Bernards Medical Center. The complaint alleged an individual claim on Ms. Branch's behalf, a survival claim for A.B., and a wrongful-death claim on behalf of A.B.'s beneficiaries.

The circuit court granted summary judgment in favor of the appellees on the survival and wrongful-death claims. The court ruled that Ms. Branch lacked standing to bring the survival claim because she had not yet been appointed administrator of A.B.'s estate, as required by Ark. Code Ann. § 16-62-101(a)(1) (Repl. 2005). The circuit court further ruled that the wrongful-death claim was a nullity. Arkansas's wrongful-death statute requires *all* of A.B.'s statutory heirs to bring those claims in the absence of an appointed personal representative, *see* Ark. Code Ann. § 16-62-102(b), and A.B.'s putative father, Allen Buchanan, was not a plaintiff in the case. The circuit court also ruled that an amended survival claim, which Ms. Branch filed as the administrator of A.B.'s estate after the statute of limitations had expired, did not relate back to the timely filed complaint. Ms. Branch now appeals the circuit court's judgment. We affirm in part and reverse and remand in part.

I. *Factual Background*

According to the facts alleged in the complaint, Ms. Branch arrived at St. Bernards emergency room shortly before midnight on December 22, 2016. She presented with elevated blood pressure, complaints of shortness of breath, and chest pain. The attending physician, appellee Dr. Martin Kosciuk, evaluated Ms. Branch for a pulmonary embolus, and finding none, he discharged her approximately three hours later. Ms. Branch returned to the emergency room shortly before midnight on December 23, 2016, whereupon she presented with severe back pain and high blood pressure. She was admitted to St. Bernards inpatient labor and delivery

2

department, where fetal monitors were unable to detect a heartbeat in Ms. Branch's unborn child. Ms. Branch delivered A.B. stillborn later that day.

On December 21, 2018, just days before the expiration of the statute of limitations, Ms. Branch filed a complaint "individually and as parent and for her use and benefit and for other statutory beneficiaries of her minor child, [A.B.]." The complaint alleged that the appellees were medically negligent because they failed to timely recognize the signs of severe preeclampsia and provide appropriate treatment, causing injury to Ms. Branch and causing A.B.'s death. As indicated above, the complaint sought damages for Ms. Branch individually; for A.B.'s estate on a survival claim pursuant to Ark. Code Ann. § 16-62-101; and for A.B.'s wrongful-death beneficiaries, including "Emery Branch, mother of decedent A.B. and Allen Buchanan, father of decedent A.B."

On January 29, 2019, after the statute of limitations had expired, one of the defendants named in the complaint, Dr. Serena Vance, moved to dismiss the wrongful-death claim. Dr. Vance argued that the wrongful-death statute, Ark. Code Ann. § 16-62-102(b) (Supp. 2021), requires actions to be brought "by the personal representative of the decedent's estate," or "if no personal representative exists, the action must then be brought by all of the statutory beneficiaries of the deceased person." The doctor asserted that Ms. Branch "is not the personal representative of A.B.'s estate," and "not all of A.B.'s statutory beneficiaries are joined as plaintiffs to the action" because A.B.'s father, Allen Buchanan, "is not named a plaintiff in [the] action." For these reasons, Dr. Vance asserted that the wrongful-death claim "[was] a nullity." The remaining defendants later adopted Dr. Vance's motion to dismiss.

3

On March 11, 2019, St. Bernards, the registered nurses named as defendants in the complaint, and St. Bernards insurance company moved for partial summary judgment on the survival claim. This motion was also later adopted by the remaining defendants. In the motion, the defendants asserted that Ms. Branch lacked standing to bring a survival claim on behalf of A.B.'s estate because Ark. Code Ann. § 16-62-101(a)(1) provides that only his personal representative could pursue such a claim. The motion further contended that any amendment to add Ms. Branch as the administrator of A.B.'s estate, if she was ever so appointed, would not relate back to the original complaint because "the original complaint is a nullity because [Ms. Branch] lacks standing," and "an amended complaint would constitute the filing of a new suit."

On March 13, 2019, Ms. Branch filed an amended complaint "individually and as the duly appointed personal representative of her unborn child, A.B., deceased." An order appointing Ms. Branch as the administrator of A.B.'s estate, dated March 11, 2019, was attached to the amended complaint. Like the original, the amended complaint asserted that the appellees were medically negligent and sought damages for Ms. Branch individually, for A.B.'s estate under Arkansas's survival statute, and for Ms. Branch as A.B.'s sole wrongful-death beneficiary. In a departure from the initial complaint, the amended wrongful-death claim asserted that "the wrongful death beneficiaries include only Emery Branch, mother of decedent A.B.," and "[t]he putative father of the decedent, Allen Buchanan, has not legitimized A.B. and as such is not recognized under Arkansas law as a statutory beneficiary or heir at law."

On March 19, 2019, Dr. Vance filed a reply in support of her motion to dismiss, which the remaining defendants also adopted. The reply incorporated the arguments in Dr. Vance's first motion to dismiss and additionally argued that the amended survival and wrongful-death

4

claims could not relate back to the timely filed initial complaint. Among other things, the doctor argued that the original claims were nullities because Ms. Branch lacked standing and, therefore, provided "nothing to which the amended complaint could relate back." Additionally, Dr. Vance asserted that "individual heirs at law," like Ms. Branch in the original complaint, "are entirely distinct legal persons from even the same individuals in their later capacity as appointed administrators, and thus different parties." As a result, "an amended complaint that substitutes the original plaintiff and replaces [her] with an entirely new plaintiff does not constitute an amendment to the original complaint but the filing of a new lawsuit" that, if filed beyond the applicable statute of limitations—as here—must be dismissed as untimely.

Ms. Branch urged the circuit court to deny the motion to dismiss and the motion for partial summary judgment. While she conceded that the survival claim in the original complaint was a nullity because she had not yet been appointed administrator of A.B.'s estate, she argued that the original wrongful-death claim remained viable despite Mr. Buchanan's absence as a plaintiff. Specifically, Ms. Branch argued that she sufficed as A.B.'s sole statutory heir under the supreme court's decision in *Scoggins v. Medlock*, 2011 Ark. 194, 381 S.W.3d 781. *Scoggins*, she said, directs that a putative father must legally establish his paternity before he can be a wrongful-death beneficiary or, as here, a statutory heir necessary to bring suit in the absence of a personal representative. The original wrongful-death claim survived because Mr. Buchanan had not yet established his paternity; therefore, he was not required to be named as a plaintiff in the original complaint. Ms. Branch further argued that the amended survival claim should not be dismissed because it arose from the same "conduct, transaction, or occurrence" set forth in the original (allegedly viable) wrongful-death claim.

5

On October 8, 2019, the circuit court entered an order granting the motion to dismiss the wrongful-death claim and granting the motion for summary judgment on the survival claim. Regarding the wrongful-death claim, the circuit court observed that *Scoggins* was distinguishable because it involved an interpretation of Arkansas paternity statutes and a putative father's claim to wrongful-death benefits in a lawsuit properly filed by the personal representative of the stillborn child. The circuit court also observed that the "wrongful death statute does not mandate the entry of a formal order of paternity." Rather, "whoever the decedent's father is, he is an heir at law and a wrongful death beneficiary under the plain meaning of Ark. Code Ann. § 16-62-102(b) and (d)." Additionally, while "an order establishing paternity was never sought, there appears to be no dispute that Allen Buchanan is the father of A.B," as alleged in the original complaint. Consequently, the circuit court ruled that Ms. Branch "failed to comply with Ark. Code Ann. § 16-62-102 when she filed the initial complaint without either being appointed personal representative of [A.B.'s] estate, or, alternatively, joining all statutory wrongful death beneficiaries as named plaintiffs."

The circuit court also ruled that the amended survival claim did not relate back to the initial complaint. Citing the supreme court's decision in *Dachs v. Hendrix*, 2009 Ark. 542, 354 S.W.3d 95, the circuit court determined that the survival claim could not relate back to the only viable cause of action that remained: Ms. Branch's individual claim for damages. The circuit court observed that *Dachs* and other cases establish that "an appointed administrator [is] a legal person entirely distinct from the person bringing individual claims in the original suit." Accordingly, "an amended complaint filed by a newly appointed personal representative is a new

6

lawsuit which does not relate back to the initial complaint," and the amended survival claim, therefore, was also barred by the statute of limitations.

The circuit court entered a final judgment and an Ark. R. Civ. P. 54(b) certification on October 28, 2019. Ms. Branch now appeals the circuit court's judgment.

## II. *Standard of Review*

The circuit court considered matters outside the pleadings when it granted the motion to dismiss the wrongful-death claim. Therefore, we will review the circuit court's order as granting summary judgment on both the survival and wrongful-death claims. *See Travis Lumber Co. v. Deichman*, 2009 Ark. 299, at 23, 319 S.W.3d 239, 253.

On review, we determine "if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material question of fact unanswered." *E.g.*, *Madden v. Mercedes-Benz USA, Inc.*, 2016 Ark. App. 45, at 4, 481 S.W.3d 455, 458. "Once the moving party has established prima facie entitlement to summary judgment by affidavits, depositions, or other supporting documents, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact." *Id.* "Ordinarily, on appeal from a summary-judgment disposition, the evidence is viewed in the light most favorable to the party resisting the motion." *Abraham v. Beck*, 2015 Ark. 80, at 8, 456 S.W.3d 744, 751. "[I]n a case where the parties agree on the facts," however, this court "simply determine[s] whether the appellee was entitled to judgment as a matter of law." *Id.* at 8, 456 S.W.3d at 751–52. "As to issues of law presented, [this court's] review is de novo." *Id.*

## III. *Discussion*

A. Heir at Law Under the Wrongful-Death Statute

Ms. Branch first argues that the circuit court erred by granting summary judgment on her wrongful-death claim. She insists that *Scoggins* establishes that Mr. Buchanan was required to legally establish his paternity before he could be considered a statutory heir necessary to bring a claim under the wrongful-death statute. Mr. Buchanan did not establish his paternity; therefore, Ms. Branch asserts that she—as A.B.'s mother—is the sole statutory heir capable of bringing the initial wrongful-death claim. Accordingly, Ms. Branch contends that the circuit court erred when it ruled that the wrongful-death claim in the original complaint was a nullity.

Arkansas Code Annotated section 16-62-102(a)(1) provides that a tortfeasor may be liable "whenever the death of a person or unborn child . . . is caused by a wrongful act, neglect, or default, and the act, neglect or default would have entitled the party injured to maintain an action and recover damages in respect thereof if death had not ensued[.]" A wrongful-death action "shall be brought by and in the name of the personal representative of the deceased person[;] if there is no personal representative, then the action shall be brought by the heirs at law of the deceased person." Ark. Code Ann. § 16-62-102(b). That is, "where there is no personal representative at the time of filing, all statutory beneficiaries must be joined as plaintiffs to the action." *Mendez v. Glover*, 2010 Ark. App. 807, at 5, 379 S.W.3d 92, 96–97 (internal quotation marks omitted). Moreover, as a creation of statute, a wrongful-death action "exists only in the manner and form prescribed by the statute; it is in derogation of the common law and must be strictly construed, and nothing may be taken as intended that is not clearly expressed." *Estate of Byrd v. Tiner*, 81 Ark. App. 366, 369, 101 S.W.3d 887, 889 (2003). While most wrongful-death actions must be brought "within three (3) years of the death of the person

8

alleged to have been wrongfully killed," Ark. Code Ann. § 16-62-102(c)(1), a wrongful-death action alleging medical malpractice must be brought within the two-year statute of limitations for such claims. *See Davis v. Parham*, 362 Ark. 352, 362, 208 S.W.3d 162, 168 (2005).

As stated, the question here is whether a putative father must legally establish his paternity before he can be one of the "heirs at law" necessary to bring a wrongful-death claim for the death of an unborn child. Ms. Branch contends that the supreme court has affirmatively answered that question in two cases: *Scoggins* and *Brewer v. Poole*, 362 Ark. 1, 207 S.W.3d 458 (2005).

The decedent in *Scoggins* was a fifteen-month-old child who was fatally injured when he was struck by a taxicab. The child's mother, Evon Medlock, was appointed administrator of his estate. After her appointment, Ms. Medlock filed a wrongful-death and survival action against the driver of the taxicab and his employer. The defendants made a settlement offer of $362,500, whereupon Scoggins, the child's putative father, filed a petition to establish his paternity through scientific testing under Ark. Code Ann. § 9-10-108 (Repl. 2020). The circuit court granted Ms. Medlock's motion to dismiss Scoggins's petition, agreeing it did not have subject-matter jurisdiction to order scientific testing. According to the circuit court, § 9-10-108 "does not contain a provision for establishing the paternity of a deceased child through scientific testing"; therefore, Scoggins "failed to state a claim upon which relief may be granted, and the court [lacked] subject-matter jurisdiction." *Scoggins*, 2011 Ark. 194, at 3, 381 S.W.3d at 783–84.

The supreme court agreed with the circuit court. The court observed that "the plain language of the statute . . . clearly allows for DNA testing to establish paternity, even in situations where the mother or putative father is deceased." *Id.* at 6, 381 S.W.3d at 785. There was no

9

provision, however, "for establishing paternity when it is the child who is deceased." *Id.* Accordingly, the supreme court affirmed the dismissal of Scoggins's petition for scientific testing.

The supreme court concluded its opinion in *Scoggins* with comments concerning Scoggins's right to share in the wrongful-death settlement. In particular, the supreme court wrote the following:

> We are mindful of [Scoggins's] assertion that he has a right to participate in a wrongful-death action involving [the decedent]. It is true that Arkansas Code Annotated section 16-62-102(d) provides that the beneficiaries of a wrongful death action include, among others, the surviving spouse, children, father, mother, brothers, and sisters of the deceased person. Where, however, it is a situation where the legal status has not been properly determined, no such right exists.

*Id.* at 6, 381 S.W.3d at 785.

*Brewer* straightforwardly holds that the "heirs at law" necessary to bring suit under section 16-62-102(b) and the beneficiaries of a wrongful-death action under section 16-62-102(d) are one and the same, *see Brewer*, 362 Ark. at 11, 207 S.W.3d at 464, and they include, among others, the surviving spouses, children, fathers, mothers, and siblings of the deceased person. *Scoggins*, according to Ms. Branch, holds that a putative father cannot be a wrongful-death beneficiary under subsection 102(d) until he legally establishes his paternity. She contends that necessarily means, according to *Brewer*, that a putative father is not an "heir at law" under subsection 102(b) until his paternity is legally recognized.

The appellees respond that the rules of statutory construction confine our analysis to the plain and unambiguous language in the wrongful-death statute, and there is no provision requiring a father's paternity to be legally recognized in order to be a beneficiary or heir at law. The appellees further argue that *Scoggins* is distinguishable. *Scoggins*, they say, involved a wrongful-

death claim properly filed by the administrator of the decedent's estate and, therefore, did not address the qualifications necessary to bring a claim as an heir at law under subsection 102(b). While we agree that *Scoggins* is not binding authority on this question, we reverse the circuit court's ruling that the initial wrongful-death claim was a nullity.

The supreme court's comments at the conclusion of the *Scoggins* opinion are not a "holding" as Ms. Branch claims. In fact, "[w]here a discussion or comment in an opinion is not necessary to the decision reached therein, the discussion or comment is obiter dictum." *Clemmons v. Off. of Child Support Enf't*, 345 Ark. 330, 348, 47 S.W.3d 227, 238 (2001). The same proposition applies to the supreme court's comments in *Scoggins*. The sole issue decided in *Scoggins* was whether scientific testing was available to Scoggins under section 9-10-108. The court's comments regarding his rights under the wrongful-death statute were not necessary to answer that question. Accordingly, we are not bound by *Scoggins*, as Ms. Branch suggests.

That is not to say, however, that we cannot find the dicta in *Scoggins* to be "persuasive and useful" here, *see Burnette v. Perkins & Assocs.*, 343 Ark. 237, 241–42, 33 S.W.3d 145, 149 (2000), and the view that the supreme court expressed in *Scoggins* is consistent with its holding in an analogous case, *Rager ex rel. Rager v. Turley*, 342 Ark. 223, 27 S.W.3d 729, 733 (2000), as well as authority from other jurisdictions.

In *Rager*, the decedent, Thomas Rager, sustained fatal injuries in a motor-vehicle accident. His adult daughter, Chandra Turley, was appointed administrator of his estate and filed a wrongful-death action on behalf of herself and Thomas's other beneficiaries, including his brother and two children from his first marriage. Ms. Turley negotiated a settlement in the

wrongful-death action and petitioned the circuit court for approval of the settlement pursuant to Ark. Code Ann. § 16-62-102(g).[1] Thomas's alleged illegitimate son, Joshua Rager, filed a motion to intervene in the petition for approval as a wrongful-death beneficiary and filed a claim to participate in the distribution. Ms. Turley objected, and the circuit court dismissed Joshua's petition to intervene because he failed to file a claim against Thomas's estate within 180 days, as required by Ark. Code Ann. § 28-9-209(d) (Repl. 2012).[2]

The supreme court affirmed the dismissal. The court disagreed that Joshua's petition was untimely according to Ark. Code Ann. § 28-9-209(d) because "it [was] clear" that the statute and its 180-day time limit "[do] not apply to claims to share in a wrongful-death settlement." *Id.* at 228, 27 S.W.3d at 732. Rather, the court concluded that the circuit court lacked subject-matter jurisdiction to "resolve the paternity question in any event." *Id.* at 229, 27 S.W.3d at 732. The court held, in fact, that "Joshua [was] entitled to have the paternity issue decided and that he may share in the settlement proceeds *if that decision is favorable to him.*" *Id.* at 231, 27 S.W.3d at 733 (emphasis added). Consequently, the supreme court affirmed the dismissal of Joshua's petition with directions to the circuit court to "transfer the matter of decedent's paternity relating to Joshua to the Pope County Chancery Court for resolution." *Id.*

---

[1]Section 16-62-102(g) provides that if the wrongful-death action is tried before the court or a settlement is submitted for court approval, the court shall "fix the share of each beneficiary, and distribution shall be made accordingly."

[2]Section 28-9-209(d) provides that an illegitimate child may inherit property from his or her father in same manner as his legitimate children if there is proof of the father's paternity and a claim is asserted against the estate within 180 days of the death of the father.

The supreme court's holding in *Rager* implies a conclusion that Joshua was required to establish Thomas's paternity before he can be a wrongful-death beneficiary under section 16-62-102(d), even without an express requirement in the wrongful-death statute that he do so. For that reason, we are more persuaded by *Scoggins*'s corollary dicta suggesting that putative fathers must establish their paternity to claim wrongful-death benefits for their children.

*Scoggins* is also consistent with cases from other jurisdictions that have addressed this question. In a similar case, the Wisconsin Supreme Court held that a putative father could not bring a paternity action under the state's domestic code in order to establish his paternity for "the sole purpose of then bringing a separate wrongful-death action." *In re Paternity of* C.A.V.M., 728 N.W.2d 636, 643 (Wis. 2007). The court also held, however, that the putative father could request a paternity test under a statute that empowered courts to order genetic testing "'[w]henever it is relevant in a civil action to determine the parentage . . . of any child,'" because such a determination "is relevant in [the putative father's] civil action for wrongful death." *Id.* at 643 (quoting the statute). The Louisiana Supreme Court reached a similar conclusion in *Udomeh v. Joseph*, 103 So. 3d 343 (La. 2012), which held that a putative father must legally establish his paternity "in order to maintain a wrongful death and survival action for the death of his illegitimate child." *Id.* at 348.

Additionally, the supreme court's view of the term "father" in the wrongful-death statute is consistent with other provisions in the Arkansas Code. Section 9-27-303(41)(C) (Supp. 2021), for example, defines the term "parent" as including a man

(i) to whom the biological mother was married at the time of conception or birth;

(ii) who has signed an acknowledgment of paternity pursuant to section 9-10-120;[3]

(iii) who has been found by a court of competent jurisdiction to be the biological father of the juvenile or to have otherwise established paternity; or

(iv) is listed as the parent on the birth certificate of the child.

Likewise, Arkansas Code Annotated section 9-9-206(a)(2) (Repl. 2020) requires the father of a minor to execute written consent to a minor's adoption only if one of the following conditions is met:

(A) the father was married to the mother at the time the minor was conceived or at any time thereafter;

(B) the minor is his child by adoption;

(C) he has physical custody of the minor at the time the petition is filed;

(D) he has a written order granting him legal custody of the minor at the time the petition for adoption is filed;

(E) a court has adjudicated him to be the legal father prior to the time the petition for adoption is filed;

(F) He proves a significant custodial, personal, or financial relationship existed with the minor before the petition for adoption is filed; or

(G) he has acknowledged paternity under § 9-10-120(a).

The legal rights of a father, in other words, are more than a matter of biology, and the parties here agree that Mr. Buchanan has not taken any steps to be legally recognized as A.B.'s father.

---

[3]Arkansas Code Annotated section 9-10-120(a) (Repl. 2020) provides that "[a] man is the father of a child for all intents and purposes if he and the mother execute an acknowledgement of paternity of the child pursuant to § 20-18-408 or § 20-18-409, or a similar acknowledgment executed during the child's minority."

Consequently, he is not a wrongful-death beneficiary under section 16-62-102(d) or, according to *Brewer*, an "heir at law" under section 16-62-102(b).

Finally, we reject the appellees' alternative argument that Mr. Buchanan was an "heir at law" because he stood *in loco parentis* to A.B. Their citations to *Golden v. Golden*, 57 Ark. App. 143, 942 S.W.2d 282 (1997), and *Bethany v. Jones*, 2011 Ark. 67, 378 S.W.3d 731, both involving a guardian's relationship to a child born alive, are not persuasive. Moreover, the supreme court has defined the term *in loco parentis* as "in place of a parent; instead of a parent; charged factitiously with a parent's rights, duties, and responsibilities." *Daniel v. Spivey*, 2012 Ark. 39, at 6, 386 S.W.3d 424, 428 (internal quotation marks omitted). That is to say, *in loco parentis* "refers to a person who has fully put himself in the situation of a lawful parent by assuming all the obligations incident to the parental relationship and who *actually discharges those obligations*." *Id.* (emphasis added). Even assuming that a putative father could stand *in loco parentis* to his own biological child, that relationship did not arise here because A.B. tragically was not born alive. The circuit court's judgment dismissing the wrongful-death claim, therefore, is reversed.

## B. Relation Back

Ms. Branch next argues that the circuit court erred when it ruled that the amended survival claim did not relate back to the timely initial complaint. She asserts that the amended survival claim arises from the same "conduct, transaction, or occurrence" as the original wrongful-death claim and, therefore, should relate back under Ark. R. Civ. P. 15(c).

The appellees respond that supreme court precedent establishes that an amended claim that substitutes an entirely new plaintiff, as the amended survival claim did here, cannot relate

back to the claim brought in the original complaint because "it [is] not an amendment, but rather a new suit." *St. Paul Mercury Ins. Co. v. Cir. Ct. of Craighead Cnty.*, 348 Ark. 197, 206, 73 S.W.3d 584, 589 (2002). The same is true, they say, for the amended wrongful-death claim. The appellees assert that even if the original wrongful-death claim was valid, the amended claim was "new" simply because Ms. Branch, in her capacity as administrator of A.B.'s estate, was substituted as a plaintiff in place of Ms. Branch in her individual capacity. Accordingly, they contend that the amended survival and wrongful-death claims were both new causes of action that were barred by the statute of limitations.

Rule 15(c) of the Arkansas Rules of Civil Procedure provides that an amendment of a pleading relates back to the date of the original pleading when

> (1) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

> (2) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (1) is satisfied and, within the period provided by Rule 4(i) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

The supreme court has held that "Rule 15 makes liberal provision for amendments to pleadings and even allows a plaintiff to amend to add new claims arising out of the same conduct alleged in the initial valid complaint." *St. Paul Mercury Ins.*, 348 Ark. at 205, 73 S.W.3d at 588.

Additionally, "[e]very action shall be prosecuted in the name of the real party in interest," but a court shall not dismiss a complaint "on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for

16

ratification of commencement of the action by, or joinder or substitution of, the real party in interest." Ark. R. Civ. P. 17(a). The ratification, joinder, or substitution, moreover, "shall have the same effect as if the action had been commenced in the name of the real party in interest." *Id.*

Contrary to the appellees' argument here, it takes more than simply a substitution of plaintiffs to create "new claims" preventing the application of these rules. Rather, our cases establish that Rules 15(c) and 17(a) do not apply when the original claim—usually due to a plaintiff's lack of standing—is a nullity. In those instances, the original claim "never existed," and "there is no pleading to amend and nothing to relate back." *Brewer*, 362 Ark. at 15, 207 S.W.3d at 466. Consequently, "[t]he attempted substitution of the only parties that could maintain the action in place of parties that could not [is] in the nature of the filing of a new action." *St. Paul Mercury Ins.*, 348 Ark. at 206–07, 73 S.W.3d at 590.

In *St. Paul*, for example, the initial complaint was a nullity because individual plaintiffs, and not the appointed administrator of the decedent's estate, alleged the one and only cause of action—a survival claim under section 16-62-101—in the complaint. *See id.* at 201, 73 S.W.3d at 586. The original survival and wrongful-death claims were nullities in *Dachs*, moreover, because the complaint did not indicate that those claims had been filed in the name of the appointed personal representative of the decedent's estate. *See Dachs*, 2009 Ark. 542, at 3, 354 S.W.3d at 98. In both cases, the court dismissed the amended claims as untimely, holding that "where an action is brought in the name of a non-existing plaintiff [or an existing plaintiff who lacks standing], an amendment to the complaint by substituting the proper party to the action as

17

plaintiff will be regarded as the institution of a new action as regards the statute of limitations."

*Id.* at 10, 354 S.W.3d 101; *accord St. Paul Mercury Ins. Co.*, 348 Ark. at 206, 73 S.W.3d at 589.[4]

With these principles in mind, we must conclude that the circuit court did not err by finding that the amended survival claim was barred by the statute of limitations. Arkansas Code Annotated section 16-62-101(a) provides that a survival action may be brought "by the person injured, or after his or her death, by his or her executor or administrator[.]" A survival action, in other words, "is a statutory action, and pursuant to the statute, only the executor or administrator could bring suit." *St. Paul Mercury Ins.*, 348 Ark. 204, 73 S.W.3d 584. Ms. Branch brought the initial survival claim in her individual capacity and not as administrator of A.B.'s estate, as she was later appointed. Because she therefore lacked standing under section 16-62-101, the initial survival claim was a nullity, and the amended claim substituting her as the administrator of A.B.'s estate was a new claim that was barred by the statute of limitations.

We cannot agree, however, that the amended wrongful-death claim is also time-barred. As we have already concluded, Ms. Branch validly brought the original claim as A.B.'s only statutory heir, and the wrongful-death statute required her to pursue the claim as the personal representative of A.B.'s estate once she was appointed. *See Byrd*, 81 Ark. App. at 369–70, 101 S.W.3d at 890. The substitution of a new plaintiff in the amended wrongful-death claim,

---

[4]We are aware that an introductory statement in the *St. Paul* opinion appears to contradict our view of its holding, saying that the substitution of new plaintiffs constituted a new suit subject to the statute of limitations "even if the complaint were not a nullity." 348 Ark. at 201, 73 S.W.3d at 584. We give more weight, however, to the analysis in the opinion, which turns on the plaintiff's lack of standing to bring the original survival claim.

therefore, did not create a new cause of action preventing application of Rule 15(c) or Rule 17(a).

IV. *Conclusion*

We affirm the dismissal of the amended survival claim because the initial claim, which was not brought in the name of A.B.'s personal representative as required by section 16-62-101(a)(1), was a nullity. We reverse the dismissal of the amended wrongful-death claim, however, because Ms. Branch validly brought the claim in the original complaint as A.B.'s only heir at law under section 16-62-102(b).

Affirmed in part; reversed and remanded in part.

KLAPPENBACH and BROWN, JJ., agree.

*The Cochran Firm Memphis*, by: *Howard B. Manis*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *Michelle T. Ator* and *Kimberly D. Young*; and *Waddell, Cole & Jones, PLLC*, by: *Paul D. Waddell* and *Samuel Waddell*, for appellees.

19